[Crim. No. 5871. Fourth Dist., Div. Two. Sept. 20, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES THOMAS MALLOY, Defendant and Appellant.

## Counsel

Charles Thomas Malloy, in pro. per., and K. Dale Busn, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Conrad D. Petermann, Jon F. Farrell and Alan S. Meth, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**TAMURA, J.**—On an information charging him with selling LSD in violation of Health and Safety Code section 11912 (now § 11379) and alleging a prior conviction for a violation of the same section, defendant pled not guilty and denied the prior.[1] Following a jury trial, he was found guilty as charged and the allegation of the prior was found to be true. Defendant

---

[1]Unless otherwise indicated, all section references are to the Health and Safety Code.

was sentenced to state prison for the term prescribed by law. He appeals from the judgment of conviction.

Viewing the evidence most favorable to the People, as we must on appellate review, we piece together the following narrative of events:

Defendant offered to sell 500 tabs of LSD to Willie Wisely on approximately January 1, 1972, but Wisely indicated that he did not have the funds with which to buy them. A few days later Wisely was arrested by the Huntington Beach police and agreed to assist them in the purchase of illegal narcotics. He phoned defendant on January 12, 1972 and asked if he still had some "acid" for sale because his cousin wanted to purchase some. Defendant said he had 500 tabs for sale for $275. They agreed to meet at 2:30 that afternoon at a restaurant in La Habra to complete the transaction.

Before the officers left for the restaurant, Wisely was searched by State Narcotics Agent Fleischer to make sure he did not possess any narcotics. Agent Synicky witnessed the search. Synicky, Wisely and Patricia Gaston (a police woman) left for the restaurant in an unmarked state car. They arrived at 3 p.m. and, failing to find defendant, proceeded to an apartment on Bedford Avenue in La Habra, where Wisely had seen defendant on two previous occasions. They parked a few cars behind defendant's car on the street in front of the apartment. Miss Gaston waited in the car while Wisely and Synicky entered the apartment. Fleischer and Robert Moran (a Huntington Beach police officer) observed the scene from a parking lot down the street.

There were about 13 persons in the apartment when Wisely and Synicky entered. Wisely asked where defendant was and was directed to a bedroom. When he and Synicky went to the bedroom, they observed defendant and others placing a white powder into gelatin capsules. Synicky asked if that was his acid. Defendant said, "Oh, it's Willie," and told them the powder was psilocybin. Wisely introduced Synicky as his cousin.

Defendant and Wisely discussed the sale of the LSD and walked out to defendant's car; Synicky followed them out and stood by the outside gate where he could observe the transaction; defendant opened the passenger door, reached into the center console and pulled out a cellophane baggie containing approximately 500 red and green tabs which he handed to Wisely, telling him to get the money for it from Synicky; Wisely then handed the baggie to Synicky and the three reentered the apartment; in response to Synicky's question of how much he wanted for the LSD, defendant said it would cost $275, but he told Synicky to deal through Wisely;

Synicky asked him if he was sure there were 500 tabs and defendant said yes; defendant refused to deal with Synicky who finally dropped the money in front of him and left; the tabs were examined by a state chemist and were determined to be LSD.

In defense, defendant testified that Wisely offered to sell him LSD on approximately January 5, 1972; Wisely called him on January 12 and asked if he knew anyone who could sell him some LSD; that same day Wisely came to the Bedford Street apartment where defendant was visiting and tried to sell him LSD; defendant went to his car to get some cigarettes. Defendant's friends who were at the Bedford Street apartment that day testified that Synicky had not followed defendant and Wisely to the car but had remained in the living room.

After the jury was instructed and sent out to deliberate, defendant asked permission to go to the cafeteria to get a coke. The judge consented, with the admonition that he come right back. He never returned. After making several inquiries, the judge determined that defendant had voluntarily absented himself from the trial. A bench warrant was issued and defendant was subsequently apprehended.

One of the defendant's major contentions on appeal consists of an attack upon the procedures followed in the court below in the proof of the prior conviction. The circumstances surrounding the proof of the prior were as follows:

On the first day of trial, the judge inquired of defense counsel prior to jury selection whether defendant desired to deny the prior, since if he did, the allegation would have to be read to the jury and would have a bearing on jury *voir dire*. Defense counsel said that for the time being defendant would deny the prior. When asked if there was a question of the constitutional validity of the prior, defense counsel stated that he did not know. However, he attacked the prior on the ground it was not a felony conviction and on the ground a subsequent amendment of the statute increasing the punishment for a second conviction was invalid. The contentions were rejected. At this point, the judge read the information to the jury panel, omitting, however, any reference to the prior.

Later that same day defense counsel informed the court he would advise defendant to admit the prior, but later reverted to his original position. The judge thereupon read to the jury panel the portion of the information charging the prior conviction and explained that defendant denied the prior.

At trial the People introduced certain documentary proof of the prior

offense.[2] In addition, the People were permitted, over defendant's objections, to introduce Agent Thompson's testimony describing the prior transaction, the drug purchased on that occasion, and the testimony of a chemist that the drug defendant sold to Agent Thompson on the prior occasion was LSD. At the conclusion of Thompson's testimony, defense counsel moved to strike the testimony on the ground it was irrelevant and immaterial. The motion was denied.

On the fifth day of trial, defense counsel argued that the defendant's guilty plea to the prior offense was unconstitutionally obtained and that evidence of the prior should, therefore, be excluded. The judge denied defendant's request for a hearing on the subject inasmuch as proof of the prior had already been presented to the jury and the issue had not been timely raised. However, the judge reserved decision on defense counsel's motion for a mistrial on the ground the prior conviction was invalidly obtained. The next day, outside of the presence of the jury, the district attorney introduced into evidence a transcript of proceedings in the San Bernardino County Superior Court on January 12, 1970, showing that defendant was represented by counsel and was informed of and waived his constitutional rights before entering his plea of guilty to a violation of section 11912.

Defendant asserts that six errors were made by the court below: (1) The prosecution was improperly permitted to produce evidence of a prior felony conviction which defendant had admitted on the record; (2) proving the prior through testimony of the agent who purchased LSD from defendant and by the introduction of the LSD was improper; (3) the court erred in the procedure followed to determine the constitutional validity of the prior; (4) the court erred in receiving evidence that defendant had offered to sell LSD to Wisely on a previous occasion; (5) it was error to receive the jury verdict in defendant's absence; and (6) that portion of section 11912 precluding parole consideration for five years for second offenders is unconstitutional in that it constitutes cruel and unusual punishment.

# I

Defendant asserts he admitted the charged prior conviction and, therefore, proof thereof should not have been received. The contention is devoid of merit.

---

[2]Among the documents were certified copies of the minutes of the Superior Court of San Bernardino County showing defendant's plea of guilty of a violation of Health and Safety Code section 11912 and the pronouncement of judgment; the order of commitment to the Youth Authority; the order of discharge from the Youth Authority; and the order terminating probation.

Defense counsel changed his strategy several times as to whether defendant was admitting or denying the prior. On the opening day of trial, he first indicated defendant would continue to deny the prior, then said he would admit it, and then interrupted the court's advisements to defendant in order to say he was advising defendant to deny it. On the fifth day of trial, after the district attorney had introduced evidence of the prior conviction, defense counsel urged that defendant had admitted the prior. The judge properly disagreed. In his argument to the jury, defense counsel conceded the People had proved the existence of the prior beyond a reasonable doubt.

We are satisfied the trial judge correctly determined that defendant never admitted the prior, forcing the People to prove its existence. The record reveals the judge made every effort to ascertain whether defendant desired to change his plea to the charged prior. In view of defense counsel's equivocations, the judge had no alternative but to assume that defendant stood on the denial entered at the time of his arraignment. A defendant's refusal to answer whether he admits a prior is equivalent to a denial. (Pen. Code, § 1025.)

## II

Defendant urges that the trial court erred in permitting the People, over his objections, to prove the prior by testimony of the narcotics agent describing the buy resulting in the prior conviction, by introduction of the drug purchased on that occasion, and by the chemist's testimony that the drug was LSD.

We have found no case passing upon the propriety of permitting the prosecution, in essence, to retry the former offense solely to prove a prior. The normal method of proving a prior is by the introduction of a properly authenticated judicial record of the prior conviction. Such evidence constitutes prima facie proof of the prior. (Pen. Code, § 969b.) Additional evidence has been held to be proper to show that defendant was the same person who suffered the prior conviction. (*People* v. *Luckett,* 1 Cal.App.3d 248, 252-253 [81 Cal.Rptr. 539].) In the case at bench, however, the additional proof far exceeded that limited scope.

The People contend the officer's testimony describing the prior buy, the introduction of the drug and proof that it was LSD were admissible to prove defendant's knowledge of the character of the contraband, citing *People* v. *Archerd,* 3 Cal.3d 615, 639 [91 Cal.Rptr. 397, 477 P.2d 421]. *Archerd* held it is not necessary for a defendant to affirmatively raise issues

before the People may meet them where proof of those issues is part of the prosecution's burden. (See *People* v. *Greene,* 34 Cal.App.3d 622, 632 [110 Cal.Rptr. 160]; *People* v. *Sanchez,* 33 Cal.App.3d 413, 417 [109 Cal.Rptr. 56]; *People* v. *Lawrence,* 25 Cal.App.3d 213, 220 [101 Cal. Rptr. 671].)

However, assuming, *arguendo,* that the evidence may have had some probative value aside from proof of the prior, where probative value of evidence is substantially outweighed by the probability that its admission will necessitate undue consumption of time, or will create substantial danger of undue prejudice, confusing the issues or misleading the jury, the court in the exercise of its discretion may exclude the evidence. (Evid. Code, § 352.) To permit proof of a prior by "retrying" a defendant for that offense could not only involve undue consumption of judicial time but could result in substantial risk of prejudice to a defendant. In the case at bench the documentary evidence showed that defendant had pleaded guilty to the prior. Knowledge of the contraband character of the items sold could be reasonably inferred from that evidence without retrying the prior. Moreover, defendant never challenged his identity as the one who had suffered the prior conviction. In the foregoing circumstances, the trial judge should have exercised his discretion under Evidence Code section 352 and sustained defendant's objection to the introduction of the questioned evidence. However, given the overwhelming evidence of defendant's guilt of the crime charged, there is no reasonable probability that a verdict more favorable to defendant would have been reached had the evidence been excluded. (*People* v. *Watson,* 46 Cal.2d 818, 835-837 [299 P.2d 243].)

### III

■ Defendant contends the court erred in the procedure used to determine the constitutionality of the prior. The contention lacks merit.

An alleged constitutional infirmity in a prior conviction other than the right to counsel is a matter which must be left to proceedings in habeas corpus and not dealt with in the type of pretrial hearing discussed in *People* v. *Coffey,* 67 Cal.2d 204, 217-218 [60 Cal.Rptr. 457, 430 P.2d 15]. (*People* v. *Vienne,* 30 Cal.App.3d 266, 270-272 [105 Cal.Rptr. 584].) In the instant case defendant's initial attack on the prior was on grounds other than denial of right to counsel. The judge correctly rejected

those attacks.[3] At the outset of the trial when the judge asked him if he was questioning the constitutional validity of the prior, defense counsel responded he did not know. It was not until the fifth day of trial, after documentary proof of the prior had been received, that defense counsel for the first time asserted the record of conviction theretofore received in evidence failed to show that defendant was represented by counsel when he entered his plea of guilty. The next day, in proceedings outside the presence of the jury, the district attorney presented additional evidence showing that defendant had been represented by the public defender and had waived his rights to a jury trial and to confrontation and cross-examination of witnesses, and his privilege against self-incrimination. The judge thereupon determined that the prior was constitutionally valid.

Thus, despite defendant's belated challenge to the constitutional validity of the prior, the trial court did in fact comply with the procedure contemplated by *People* v. *Coffey, supra,* 67 Cal.2d 204. In passing, it should be noted that defendant makes no claim on appeal that the prior was constitutionally invalid.

## IV

Defendant next attacks the trial court's ruling admitting the testimony of Wisely concerning defendant's offer to sell him LSD about a week before the sale which resulted in his arrest. While evidence of other crimes is inadmissible to prove criminal disposition, it is admissible if offered to prove a fact material to the charged crime and if it meets the general test of relevancy as to such fact. (*People* v. *Durham,* 70 Cal.2d 171, 186 [74 Cal.Rptr. 262, 449 P.2d 198].) The prior offer to sell was relevant to prove the actual transaction with which defendant was charged; it showed how Wisely knew defendant would sell LSD and identified defendant as the source of the drug that was purchased.

## V

Defendant contends the court erred in receiving the jury verdict in his absence. The contention lacks merit.

---

[3]Defense counsel moved to strike the prior on the ground it was not a felony conviction since defendant had been sentenced to the California Youth Authority. That motion was correctly denied. (Health & Saf. Code, §§ 11356, 11381.) He also urged that the prior was invalid because a later amendment to the statute increased the punishment for a second conviction. That attack was nonmeritorious. (See *People* v. *Venegas,* 10 Cal.App.3d 814, 822-823 [89 Cal.Rptr. 103].)

A trial in a felony case may proceed in the absence of the defendant when he is voluntarily absent. (Pen. Code, § 1043, subd. (b)(2).) In the case at bench when defendant failed to return after being given permission to go to the cafeteria for a coke, the judge, after waiting for a period of time and making a series of phone calls, determined that defendant had voluntarily absented himself from the court room. When defendant was later apprehended on a bench warrant, he offered no excuse for his previous disappearance. As we held in *People* v. *Connolly,* 36 Cal.App.3d 379, 384-385 [111 Cal.Rptr. 409], Penal Code section 1043, subdivision (b)(2), was designed to prevent a defendant from intentionally frustrating the orderly processes of his trial by voluntarily absenting himself. Under the circumstances of the instant case, the trial judge properly determined that defendant had voluntarily absented himself. It was not error to receive the jury verdict in defendant's absence.

## VI

Defendant's final contention is that under the rationale of *In re Foss,* 10 Cal.3d 910 [112 Cal.Rptr. 649, 519 P.2d 1073], that portion of section 11912 (now § 11379) precluding parole consideration for a second offender for a minimum period of five years constitutes cruel and unusual punishment.[4] Defendant makes no attack upon the five years to life term prescribed by the section.

In California a punishment may violate article I, section 6 of the

---

[4]Health and Safety Code section 11912 provided in pertinent part: "If such person has been previously convicted once of any felony offense described in this division or Section 11500.5, 11501, 11502, 11502.1, 11530.1, 11530.5, 11531, 11532, 11540, or 11557, of a conspiracy to commit any offense described in this division or Section 11500.5, 11501, 11502, 11502.1, 11530.1, 11530.5, 11531, 11532, 11540, or 11557, or of any offense under the laws of any other state or the United States which, if committed in this state, would have been punishable as a felony offense described in this division or Section 11500.5, 11501, 11502, 11502.1, 11530.1, 11530.5, 11531, 11532, 11540, or 11557, the previous conviction shall be charged in the indictment or information and, if found to be true by the jury upon a jury trial or by the court upon a court trial or if admitted by the person, he shall be imprisoned in the state prison for a period of five years to life and shall not be eligible for release upon completion of sentence or on parole or any other basis until he has been imprisoned for a period of not less than five years in the state prison."

Health and Safety Code section 11379, subdivision (b), now provides: "(b) If such person has been previously convicted once of any offense described in subdivision (d), the previous conviction shall be charged in the indictment or information and, if found to be true by the jury upon a jury trial or by the court upon a court trial or if admitted by the person, he shall be imprisoned in the state prison for a period of five years to life and shall not be eligible for release upon completion of sentence or on parole or any other basis until he has been imprisoned for a period of not less than five years in the state prison."

California Constitution "if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch,* 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921].) In *In re Foss, supra,* 10 Cal.3d 910, the court held that former section 11501 (now § 11352) precluding parole consideration for a person incurring a second conviction for the sale of heroin was cruel or unusual punishment. The court applied the "three distinct techniques" described in *In re Lynch, supra,* 8 Cal.3d 410—examination of the nature of the offense and offender, comparison of the penalty with punishment imposed for more serious crimes in California, and comparison of the penalty with punishment prescribed for the same offense in other jurisdictions—and concluded that the minimum ten years confinement for parole consideration without regard to the existence of possible mitigating circumstances such as the addict status of the offender, the quantity of narcotics involved, the nature of the purchaser or the purpose of the sale was violative of article I, section 6 of the California Constitution. (*In re Foss, supra,* 10 Cal.3d 910, 919.)

In *Foss,* severance of the invalid provision precluding parole consideration for ten years left the offender eligible for parole consideration "within three years." (Pen. Code, § 3049.) The court held that this "allowed for consideration of the rehabilitative progress made by the offender after a reasonable period of incarceration and did not, therefore, constitute a penalty so disproportionate to the offense as to be in violation of the mandate of article I, section 6 of [the California] Constitution." (*In re Foss, supra,* 10 Cal.3d 910, 929.) The court reserved decision on the validity of the three-year minimum term during which a *first offender* under section 11501 would be ineligible for parole consideration. (*In re Foss, supra,* p. 917, fn. 3.)

In applying the first criterion set out in *In re Lynch,* the *Foss* court observed that a mandatory 10-year term without parole consideration thwarted the penological purposes of the indeterminate sentence. The court noted that in *People* v. *Lorentzen,* 387 Mich. 167 [194 N.W.2d 827, 833] (on which it relied extensively in *In re Lynch* as well as in *Foss*) the Michigan Supreme Court had pointed out: " 'Experts on penology and criminal corrections tend to be of the opinion that, except for extremely serious crimes or unusually disturbed persons, the goal of rehabilitating offenders with maximum effectiveness can best be reached by short sentences of *less than five years' imprisonment.*' " (*In re Foss, supra,* 10 Cal.3d 910, 924, (italics added.)

▮ Under section 11912, the only flexibility a judge would have in

dealing with an offender who had suffered a prior conviction would be to strike the prior. Although deterrence and isolation of the offender are other purposes served by a mandatory term for second offenders, the *Foss* court determined that those considerations were insufficient to overcome the excessive severity of the 10-year minimum term before the offender would be eligible for parole consideration. We hold the same to be true of the mandatory five years for a second offender under section 11912. Insofar as the goal of societal protection is concerned, as the *Foss* court points out, if the offender poses a threat to society the Adult Authority still retains the discretion to refuse to grant parole until the offender has been rehabilitated even if this should mean holding him for a period beyond five years in the case at bench.

The second test—whether the punishment is disproportionate to the offense—involves an examination of the penalty in this state for second offenders of other more serious offenses. As the Attorney General concedes, the great majority of convicts in California may be released on parole after serving one year or one-third the minimum sentence, whichever is greater (Pen. Code, § 3049), or six months, as provided in some statutes; aside from statutes dealing with drug-related offenses, instances in which parole eligibility is withheld for longer than one-third the minimum term are relatively few.

The other citerion set out in *Lynch* and *Foss* is to compare the penalty in other states for the same offense. According to the information supplied to us by the Attorney General, only 11 other states impose a mandatory minimum of five years or more for a second conviction of the sale of LSD. The penalty imposed by section 11912 is thus "more severe than that imposed by the vast majority of the states of the Union." (*In re Foss, supra*, 10 Cal.3d 910, 928.)

We conclude that under the *In re Lynch* guidelines, as applied by *Foss* to minimum periods of confinement for eligibility to parole consideration, the five-year minimum period prescribed by section 11912 without regard to possible mitigating circumstances, the quantity of narcotics involved, or the nature or purpose of the sale constitutes cruel or unusual punishment in violation of article I, section 6 of the California Constitution. This decision, however, does not affect the validity of the remainder of the section; as in *Foss*, the provision precluding parole consideration for second offenders is severable from the remainder of the section.

The judgment is affirmed. However, the Adult Authority is directed to

grant parole consideration to defendant at such time as is otherwise appropriate under the laws of this state.

Kerrigan, J., concurred.

**GARDNER, P. J.**—I concur in all portions of the majority opinion except that portion which holds unconstitutional on the ground that it is cruel or unusual punishment, that portion of Health and Safety Code, § 11912 (now § 11379), which precludes parole consideration for a second offender for sale of restricted dangerous drugs for a minimum period of five years.

While I personally do not believe in long prison sentences, mandatory sentences, or any sentence which precludes parole consideration for any particular period of time, I do not conceive it to be the function of a judge to substitute his opinion for that of the Legislature as to the merits of punishment statutes enacted by the Legislature. Reasonable minds may differ as to the seriousness of various degrees of social misconduct and the appropriate punishment necessary to control those acts. I cannot accept the statement made by counsel in this case that "What the court said in *Foss* was that it *did not like* the method the legislature was using to try to solve the drug problem." (Italics added.) Whether or not any court *likes* the measures taken by the Legislature is immaterial.

"The choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will; in appropriate cases, some leeway for experimentation may also be permissible. The judiciary, accordingly, should not interfere in this process unless a statute prescribes a penalty 'out of all proportion to the offense' [citations], i.e., so severe in relation to the crime as to violate the prohibition against cruel or unusual punishment." (*In re Lynch,* 8 Cal.3d 410, 423-424 [105 Cal.Rptr. 217, 503 P.2d 921].)

When the Supreme Court in *Lynch* adopted disproportionality as a test for constitutionality of punishment statutes it applied the three-prong test discussed below. *In re Foss,* 10 Cal.3d 910 [112 Cal.Rptr. 649, 519 P.2d 1073], applied that test and found unconstitutional a provision precluding parole consideration for 10 years of one convicted of sale of narcotics following a prior conviction for possession of narcotics.

The *Lynch-Foss* test is as follows:

(1) The nature of the offense and/or the offender with particular regard to the degree of danger both present to society.

Having seen too many lives destroyed by the use of LSD during my years on the trial bench, I list the sale of this substance near the top of any Richter Scale of anti-social misconduct—far above most crimes of violence which usually affect only one victim. While *Foss* distresses me in its accent on the fact that Mr. Foss was an addict, we are not concerned in this case with that issue. Here, the defendant was not an addict but a commercial operator who sold large quantities of LSD for profit. Therefore, insofar as the offense and the offender are concerned, I find nothing particularly shocking in the penalty prescribed.

However, *Foss* added a new dimension to *Lynch*, "a consideration of the penological purposes of the prescribed punishment." (*Foss, supra,* pp. 919-920.) Citing *People* v. *Lorentzen,* 387 Mich. 167 [194 N.W.2d 827], which struck down a mandatory 20-year minimum term for the sale of marijuana, the court in *Foss* found the 10-year minimum for a heroin sale following a prior narcotics conviction during which minimum the defendant was precluded from parole consideration to be unconstitutional. It then cited *Lynch* for the following statement: " 'Experts on penology and criminal corrections tend to be of the opinion that, except for extremely serious crimes or unusually disturbed persons, the goal of rehabilitating offenders with maximum effectiveness can best be reached by short sentences of less than five years' imprisonment.' " (*Foss, supra,* at p. 924.) However, the court reserved decision as to the validity of the three-year minimum term during which a first offender, under section 11501, would be ineligible for parole consideration. (*Foss, supra,* at p. 917, fn. 3.) The question immediately presents itself as to just where is the breaking point. Ten years is too much says the Supreme Court. The same court says that three years may not be. How about two years, six and one-half months? Or four years, seven months and twenty-nine days? Or three years, two months and eighteen days? I submit that when courts begin to substitute their views on penological reform for that of the Legislature or set themselves up as some kind of a supervisory agency over punishment statutes, we are seriously eroding the principle of separation of powers.

I grant that it is now the law of this state that a sentence of 10 years for a second heroin sale in which the person is ineligible for parole consideration is unconstitutional. However, I am reluctant to leap from that express holding to a compelled conclusion that any lesser term is neces-

sarily unconstitutional. There is no possibility of balancing severity of crime against severity of punishment with mathematical exactitude. I merely conclude this portion of my comments by stating that considering the nature of the offense and the nature of the offender, I do not feel that the punishment in this case is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.

(2) A comparison of the penalty with punishment imposed for more serious crimes in California.

There are few more serious crimes than the sale of LSD. Usually only one person is murdered, kidnaped, raped or assaulted. The acid pusher destroys or attempts to destroy all of his customers, young and old, weak and strong.[1] In any matter of comparative evil, the sale of LSD is a major crime for the commission of which major punishment may and should be prescribed. I find nothing in the comparison of the punishment for this crime with the punishment for those crimes of violence set forth on page 926 of *Foss* which causes me to feel that the punishment for this crime is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.

(3) A comparison of the penalty with punishment prescribed for the same offense in other jurisdictions.

In this respect, the Attorney General has furnished us with a synopsis of laws in other states covering the penalties for the sale of narcotics. Limiting ourselves to sale with a prior narcotics conviction—the instant case—we find the following minimum terms:

Alaska—10 to 20 years, must serve minimum term.

Arizona—10 years to life, must serve minimum term.

Arkansas—5 to 10 years, must serve minimum term.

Colorado—15 to 30 years, must serve minimum term.

Delaware—30 to 99 years, with 15-year minimum term with prior sale.

Georgia—10 years to life, with 10-year minimum term.

Indiana—20 years to life, must serve minimum term.

Nebraska—10 to 40 years, must serve minimum term.

---

[1]Governor Rockefeller in addressing his state's legislature last year, said, "The hard-drug pusher is a cold and cynical destroyer of lives as much as any killer."

Tennessee—10 to 30 years, must serve minimum term.

In addition to those states which have minimum terms, the following states have the following terms for sales with prior narcotics convictions without notation as to what minimum must be served:

| | |
|---|---|
| Idaho | 30 years |
| Illinois | 2 to 40 years |
| Iowa | 30 years |
| Louisiana | 10 to 60 years |
| Maine | 5 to 20 years |
| Maryland | 40 years |
| Massachusetts | 10 to 25 years |
| Michigan | 40 years |
| Mississippi | 12 years |
| New Hampshire | 25 years |
| New Jersey | 24 years |
| New Mexico | Life |
| North Dakota | 20 years |
| Pennsylvania | 10 to 30 years |
| Texas | 10 years to life |
| Washington | 20 years |
| Wisconsin | 30 years |
| Wyoming | 40 years |

It should also be pointed out that in the neighboring State of Nevada a sale with a prior narcotic sale results in a penalty of life without possibility of parole.

It is rather obvious from this that there is no shocking disproportionality between the sentence in this state and the sentence assessed in the other states. Therefore, under this prong of the *Lynch-Foss* test, I cannot find that the punishment for the second sale of LSD is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.

Applying all three of the *Lynch-Foss* tests, I do not find that the penalty for second sale of LSD is at all out of proportion to the offense, i.e., so severe in relation to the crime as to violate the precept against cruel or unusual punishment.

I do not find the penalty aspect which precludes parole consideration for a second offense to be unconstitutional, therefore, I would affirm the judgment in its entirety.

The petitions of the appellant and the respondent for a hearing by the Supreme Court were denied November 21, 1974. Sullivan, J., and Clark, J., were of the opinion that the petitions should be granted.