48 Cal.App.3d 679 (1975)
121 Cal. Rptr. 831
THE PEOPLE, Plaintiff and Respondent,
v.
CAROLYN JOY CARBONIE, Defendant and Appellant.
Docket No. 25868.
Court of Appeals of California, Second District, Division Three.
May 30, 1975.
*682 COUNSEL
Henry P. Crabtree, under appointment by the Court of Appeal, for Defendant and Appellant.
Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Jay M. Bloom and M. Howard Wayne, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
COBEY, Acting P.J.
Carolyn Joy Carbonie appeals from a judgment of conviction of three violations of Health and Safety Code section 11380,[1] entered upon jury verdicts to that effect. The appeal lies. (Pen. Code, § 1237, subd. 1.)
Appellant contends that: (1) there is insubstantial evidence to sustain her conviction; (2) the trial court erred in admitting evidence of a tape-recorded *683 telephone conversation; and (3) the five-year minimum prison term provided for her offense constitutes cruel or unusual punishment.

FACTS[2]
On January 7, 1974, Deputy Sheriff Nancy Brown (an undercover officer) and a confidential informant met with appellant's son, Chris, then aged 16, at appellant's apartment in Pico Rivera. Brown asked Chris to sell her two "nickel bags of whites" ($5 bags of amphetamines). Chris agreed to do so, asked Deputy Brown to wait, left, then rejoined her a few minutes later. Shortly thereafter, appellant came to the bedroom door and handed the amphetamines to Chris, who in turn gave them to Deputy Brown.
On January 9, Deputy Brown telephoned Chris and asked him whether he had any more amphetamines for sale. During their conversation, which Brown recorded, Brown heard appellant ask Chris who the caller was and what the caller wanted; she then heard Chris identify her and tell appellant that she wanted more "beans" (amphetamines). Afterward, Brown went to appellant's apartment and bought two $5 bags of amphetamines from Chris.
On February 14, Deputy Brown returned to appellant's apartment a third time. As Brown approached the apartment, appellant spotted her and told her that she and Chris were out of "whites." Nevertheless, appellant invited Brown into the apartment to see Chris. There, Chris told Brown that he only had "pinks" available, and showed her a heart-shaped dexadrine pill.[3] At this point, Brown signaled other officers to move in for the arrest.

DISCUSSION

Insubstantial Evidence
(1) Appellant first contends that there is insubstantial evidence to sustain her conviction under counts I and III.
There is no merit in this contention. With respect to count I, it is true that the informant, David Armentia, was the only person who testified *684 that he actually saw appellant hand the amphetamines to Chris Carbonie on January 7th.[4] It is also true that Armentia had a police record and a possible motive for perjuring himself. Nevertheless, there is nothing inherently improbable about Armentia's testimony, and that is what we would have to hold in order to reverse the judgment. (See People v. Lyons, 47 Cal.2d 311, 319-320 [303 P.2d 329].)
With respect to count III, it is true that Chris Carbonie was the only one who handled the dexadrine pill. Nevertheless, there is ample evidence from which the trier of fact could have reasonably inferred that Chris was acting as his mother's agent in all three transactions, including the one involved in this particular count.

The Tape Recording
(2) Appellant next contends that the trial court erred when it allowed the jury to hear a tape recording of the telephone conversation between Deputy Brown and her son, Chris. Specifically, she contends that this recording was obtained in violation of her son's right to privacy (see Pen. Code, § 630) under our anti-wiretapping (Pen. Code, § 631) and anti-eavesdropping (Pen. Code, § 632) statutes, and was admitted by the trial court in violation of her own right to have such evidence excluded in any judicial proceeding brought against her. (See Pen. Code, §§ 631, subd. (c), 632, subd. (d).)
Section 633 of the Penal Code exempts certain law enforcement activities from the operation of the just-mentioned statutes. This exemption is written in the form of a grandfather clause. It reads, in pertinent part, as follows: "Nothing in Section 631 or 632 shall be construed as prohibiting ... any ... deputy sheriff ... from overhearing or recording any communication which [he or she] could lawfully overhear or record prior to the effective date of this chapter. [¶] Nothing in Section 631 or 632 shall be construed as rendering inadmissible any evidence obtained by the above-named persons by means of overhearing or recording any communication which they could lawfully overhear or record prior to the effective date of this chapter."
Appellant contends that the recording of the January 9th telephone conversation would have been unlawful before the effective date of the chapter (Nov. 8, 1967; see Stats. 1967, p. A-3) and, therefore, it is *685 unlawful today. Appellant bases this contention on the following passage from People v. Jones: "Section 631 makes unlawful any `unauthorized' wiretap. Old section 640, from which section 631 was derived, also proscribed unauthorized wiretaps. The authorization required for a legal wiretap under section 640 was the consent of the subscriber to the telephone, and the consent of the telephone company. [Citation.]" (Italics added.) (30 Cal. App.3d 852, 854 [106 Cal. Rptr. 749], app. dism. 414 U.S. 804 [38 L.Ed.2d 40, 94 S.Ct. 163].) Appellant's argument is twofold. First, she argues that Deputy Brown probably was not the subscriber[5] and could not give an effective consent to the tap. Second, she argues that there is absolutely no evidence that the telephone company consented to the tap.
Neither half of this argument has merit. As to the first half, there is absolutely nothing in the record indicating that Deputy Brown acted beyond the scope of her authority and without the consent of her superiors when she recorded the telephone conversation. Under such circumstances, we must assume that the subscriber (the sheriff or the county) impliedly consented to the tap. (See Evid. Code, § 664.)
As to the second half of the argument, appellant's interpretation of pre-1967 case law is incorrect. Law enforcement officers were not required to obtain the telephone company's consent when one of the parties to a conversation permitted the officers to record it. (See People v. Murphy, 8 Cal.3d 349, 358-361 [105 Cal. Rptr. 138, 503 P.2d 594], cert. den., 414 U.S. 833 [38 L.Ed.2d 68, 94 S.Ct. 173]; People v. Malotte, 46 Cal.2d 59, 64 [292 P.2d 517], app. dism. 352 U.S. 805 [1 L.Ed.2d 38, 77 S.Ct. 50]; People v. Cruz, 6 Cal. App.3d 384, 391 [85 Cal. Rptr. 918]; People v. Caravella, 5 Cal. App.3d 931, 933-934 [85 Cal. Rptr. 576]; People v. Jones, 254 Cal. App.2d 200, 220 [62 Cal. Rptr. 304].) Appellant has seized upon dictum in cases involving taps which were placed by law enforcement officers without the consent of either party to the conversation (People v. Jones, supra, 30 Cal. App.3d at p. 853), or which were placed by private parties. (People v. Trieber, 28 Cal.2d 657, 663-664 [171 P.2d 1].) Those cases simply do not apply to the situation before us. Here, a deputy arranged to record a particular conversation of hers over a telephone located in one of the offices of her superior, the sheriff, in the course of an official investigation of criminal activity.

*686 Cruel or Unusual Punishment

(3) Finally, appellant contends that the penalty prescribed for her offense constitutes cruel or unusual punishment. (Cal. Const., art. I, § 17.) She notes that under the provisions of section 11380 of the Health and Safety Code, she will be required to serve a minimum term of five years in state prison before she will be eligible for parole. This, she insists, is so disproportionate to her offense that it "`shocks the conscience and offends fundamental notions of human dignity.'" (In re Foss, 10 Cal.3d 910, 919 [112 Cal. Rptr. 649, 519 P.2d 1073].) In particular, she calls our attention to People v. Malloy, 41 Cal. App.3d 944 [116 Cal. Rptr. 592], in which Division Two of the Fourth District of this statewide court, in extending Foss, held that an identical five-year mandatory minimum term for a second conviction for sale of LSD constituted cruel or unusual punishment.
We think that the situations presented in Foss and Malloy are sufficiently distinguishable from the situation now before us that the opposite result is indicated here. To our mind, the penalty prescribed by section 11380 is a reasonable one in light of its underlying legislative purpose  which is to discourage adults from apprenticing minors in the drug trade. For reasons hereafter stated, we hold that the five-year minimum term prescribed for appellant's offense passes muster under all three branches of the disproportionality test referred to above. Stated otherwise, we hold that increasing the minimum term of imprisonment for the offense before us from three and one-third years (see Pen. Code, § 3049) to five years (see Health & Saf. Code, § 11380), an increase of twenty months, does not violate article I, section 17 of the California Constitution.

(1) The Nature of the Offense and/or the Offender.
Several considerations serve to distinguish the situation before us under the first branch of the test from the situations presented in Foss and Malloy.[6] To begin with, the penalty at issue in Foss bordered on a *687 status punishment; that is not true here. Our Supreme Court noted there that addicts often traffic in drugs to support their habits. (10 Cal.3d at p. 923.) The court therefore concluded that a mandatory minimum term of imprisonment constitutes cruel punishment to the extent that it fails to take into account whether a particular seller's behavior is the product of his own drug dependence. (Id. at p. 923.) Here, too, the section 11380 offender may often prove to be trafficking to support a habit. But a drug habit in no way compels an adult to use minors as agents in his ventures. It is the calculated decision to do so that constitutes the particular vice at which the section is aimed; no comparable justification existed in Foss.[7]
Second, our Supreme Court noted in Foss that there is ample reason to doubt whether addicts can, in fact, be deterred from all drug-related crime. (Id. at p. 925.) The psychological and physiological compulsions attendant to addiction are too great to expect a salutory effect from the simple expedient of imposing mandatory minimum terms across the board, with little concern for the likelihood of success in each particular instance. Nevertheless, even if society cannot hope to discourage all drug-related crime, there is no self-evident reason why it cannot hope to discourage adult addicts from dragging minors down with them. The adult addict who cannot be deterred from trafficking in drugs to support his habit may still decide not to involve a minor and to achieve his purpose by other means, provided the penalty for involving a minor is sufficiently severe and certain.
Finally, this is not a case where society has adopted the cruel philosophy of deterrence for deterrence's own sake. Here, the mandatory *688 minimum term is but a means to the ultimate end of protecting children from those adults who might otherwise be tempted to involve them in drug traffic. Indeed, the need for such a sanction seems particularly acute when we consider the fact that society's policy of leniency toward minors has the unfortunate side effect of making them ideal retail outlets in a narcotics distribution scheme.
To be sure, deterrence has its price. Mandatory minimum terms inevitably deprive the Adult Authority of the discretion the authority would otherwise have to place an offender on parole once he begins to show real promise of rehabilitation. (Id. at p. 924.) They inevitably require courts, in particular instances, to order offenders isolated for longer periods of time than appear to be justified by the threat that the offender individually represents to society. (Id. at pp. 924, 928.)
Nevertheless, the Legislature's decision to pay this price is not a decision which we find "shocking" or "offensive." Great deference is ordinarily paid to legislation designed to protect children. We, therefore, see no reason to second guess the Legislature's judgment that appellant's offense is morally reprehensible and serious enough to merit a severe and certain minimum penalty.

(2) Other California Provisions.
The second branch of the disproportionality test involves an examination of the penalties imposed in this state for the perpetration of more serious crimes. We find nothing in the comparison of the penalty for appellant's offense with the penalties prescribed for the various crimes of violence discussed in Foss (id. at pp. 925-927) which leads us to conclude that she is being cruelly or unusually punished.[8] The involvement of a *689 minor in drug trafficking constitutes a major crime and deserves a major punishment fully as much as crimes of violence do.

(3) Other Jurisdictions.
The final branch of the disproportionality test involves an examination of the penalties our sister jurisdictions impose for the same offense. The results of our survey are set forth in an appendix. On the one hand, the great majority of jurisdictions do not impose a mandatory minimum term for this offense. On the other hand, a number of states do, including such predominantly metropolitan jurisdictions as New York (six years; five grams or more) and Illinois (four years; two hundred grams or more). Tennessee imposes the highest minimum term  eight years  while Connecticut imposes the same five-year term that California does.
These statistics prove little more than that reasonable men differ in establishing an appropriate punishment for a crime which all would agree is a major one. Lacking in this case is the "virtually unanimous judgment of our sister states" to indicate that California in its choice of minimum punishment had strayed from the path of reasoned justice. (In re Lynch, 8 Cal.3d 410, 436-437 [105 Cal. Rptr. 217, 503 P.2d 921].)
In sum, we hold that an increase of 20 months in the minimum punishment for the involvement of a minor in the drug traffic is not so disproportionate as to shock our conscience and offend fundamental notions of human dignity.[9]

Irregularities in the Information and Jury Instructions.
As noted earlier in the opinion (fn. 1, ante), both the information and the jury instruction defining the offense were couched in the language of Health and Safety Code, section 11353. On the other hand, both the information and the judgment denominated the offense as a violation of section 11380.
The exact nature of the confusion can best be appreciated by referring to the language of each of these sections. As will be apparent, section *690 11353 and section 11380 by and large describe the same offense, but with one important difference. Section 11353 refers to a completely different set of proscribed substances than section 11380 does. Amphetamines and dexadrine (an amphetamine isomer) are listed as Schedule II substances in section 11055, subdivision (d). They are not among the substances covered by section 11353; they are covered by section 11380.
Section 11353 reads, in pertinent part, as follows: "(a) Every person 18 years of age or over who in any voluntary manner solicits, [etc.] any minor with the intent that the minor shall knowingly violate any provision of this chapter or Section 11550 with respect to (1) a controlled substance which is specified in subdivision (b) or (c) of Section 11054, specified in paragraph (11), (12), or (17) of subdivision (d) of Section 11054, or specified in subdivision (b) or (c) of Section 11055 or, (2) any controlled substance classified in Schedule III, IV, or V which is a narcotic drug, who hires, employs, or uses a minor to knowingly and unlawfully transport, carry, sell, give away, prepare for sale, or peddle any such controlled substance, or who unlawfully sells, furnishes, administers, gives, or offers to sell, furnish, administer, or give, any such controlled substance to a minor shall be punished by imprisonment in the state prison for a period of 10 years to life...." (Italics added.) Note that amphetamines and dexadrine are not among the substances impliedly referred to in this section. Only subdivisions (b) and (c) of section 11055 are referred to, and amphetamines and dexadrine are listed in subdivision (d) of that section. Note also the language "hires, employs, or uses a minor to knowingly and unlawfully transport, carry, sell, give away, prepare for sale, or peddle...." This is the language which was erroneously used in the information and the jury instruction.
Section 11380 reads, in pertinent part, as follows: "(a) Every person 18 years of age or over who violates any provision of this chapter involving controlled substances which are (1) classified in Schedule III, IV, or V and which are not narcotic drugs or (2) which are specified in subdivision (d) of Section 11054, except paragraphs (10), (11), (12), and (17) of such subdivision, or specified in subdivision (d) of Section 11055, by the use of a minor as agent, who solicits, induces, encourages, or intimidates any minor with the intent that the minor shall violate any provision of this article involving such controlled substances or who unlawfully furnishes, offers to furnish, or attempts to furnish such controlled substances to a minor shall be punished by imprisonment in the state prison for a period of 10 years to life...." Note that amphetamines and dexadrine are among the substances impliedly referred to because subdivision (d) of section 11055 is expressly mentioned in the quoted language. Note also *691 that the language "hires, employs, or uses a minor to knowingly and unlawfully transport, carry away, sell, [etc.]" does not appear in this section as it does in section 11353.
(4) Turning first to the information, we find that it correctly referred to section 11380. But it described the charged offense in these terms: "That the said CAROLYN JOY CARBONIE, a person 18 years of age or older, ... did willfully ... hire, employ and use Christopher Anthony Carbonie, a minor, to knowingly and unlawfully transport, carry, sell, give away, prepare for sale and peddle a controlled substance, to wit, amphetamine sulphate."[10] Obviously the district attorney erred in so describing the offense. The above-quoted language was taken from section 11353  not from section 11380, as it should have been. The question is whether this constituted harmless or reversible error.
We hold that it was harmless error. The purpose of the information is to provide the accused with fair notice of the charges he or she is expected to answer. That purpose was adequately served by the information before us. The information referred to the correct statute and named the correct substances. Moreover, the type of activity described in the information would also fall within section 11380. One who "use[s] ... a minor ... to knowingly and unlawfully ... sell" amphetamines (as the information reads) has also violated a provision of the chapter "by the use of a minor as agent" (as § 11380 reads). In any event, since appellant failed to object in the trial court to the adequacy of the notice she received, she thereby waived her objection. (Cf. People v. Schroeder, 264 Cal. App.2d 217, 229 [70 Cal. Rptr. 491].)
(5) Next, we consider the jury instruction defining the offense. It read as follows: "Every person of the age of 18 years or over who hires, employs, or uses a minor to knowingly and unlawfully transport, carry, sell, give away, prepare for sale, or peddle a controlled substance, such as amphetamine or Dexadrine, is guilty of a crime."[11] Again, this language was taken from section 11353. But we are satisfied that here, too, the error was harmless. In convicting appellant under the above instruction, the jury necessarily found, on the facts as we have described them, that appellant committed acts that would amount to a crime under section *692 11380. In other words, the jury must have believed that appellant used her son as an agent in all three sales to Deputy Brown; otherwise they would have acquitted her under this instruction. Thus, it is not reasonably probable that a result more favorable to appellant would have been reached had the jury been instructed in the exact language of section 11380. (Cal. Const., art. VI, § 13; People v. Watson, 46 Cal.2d 818, 836 [299 P.2d 243].)

DISPOSITION
The judgment is affirmed.
Allport, J., and Potter, J., concluded.
A petition for a rehearing was denied June 17, 1975, and appellant's petition for a hearing by the Supreme Court was denied July 23, 1975.

APPENDIX

 MINIMUM
 TERM THAT
 MUST BE
 STATE STATUTE SENTENCE SERVED[a]
ALABAMA Ala. Code, Tit. 22, 4 -30 years 4 years
 § 258 (52)
ALASKA Alaska Stat. 0 -life or 0
 § 17.12.110c fine or both
ARIZONA Ariz. Rev. Stat. Ann. 1 -10 years 1
 § 32-1996 or fine or both
ARKANSAS Ark. Stat. Ann. 3 -20 years 0
 § 82-2622 or fine or both
 § 43-2823
COLORADO Colo. Rev. Stat. Ann. 1 -14 years 1
 § 12-22-403(13) and fine
 § 12-22-404
 § 12-22-412
 § 17-1-204
*693 CONNECTICUT Conn. Gen. Stats. Ann. 5 -20 years 5
 § 19-480a
 § 54-125
DELAWARE Del. Code Ann. 7 -15 years 28 months
 Tit. 16, §§ 4905, 4906 and fine
 Tit. 11, § 4346
DIST. OF D.C. Code Ann. 0 -1 years 0
COLUMBIA § 33-702 or fine
 § 33-708
FLORIDA Fla. Stat. Ann. 0 -15 years 0
 § 893-13(c)2 and fine (in the
 § 775.082 discretion of the
 judge)
GEORGIA Ga. Code Ann. 5 -30 years 20 months
 § 79A-811(f)
 § 77-525
HAWAII Hawaii Rev. Stat. 0 -5 years 0
 § 329-41 or fine or both
IDAHO Idaho Code 0 -life or fine 0
 § 37-2732 or both
 § 37-2737
ILLINOIS Ill. Rev. Stats. 4 -life 4 years
 ch. 56 1/2 [if 200 grams or
 § 1401 over]
 § 1407
 ch. 38 1 -10 years 1 year
 § 1003-3-3 [less than 200
 § 1005-8-1 grams]
INDIANA Ind. Ann. Stat. 5 -40 years 1
 § 35-24.1-4-1
 § 35-24.1-4-6
 § 11-1-1-9
IOWA Iowa Code Ann. 0 -7 1/2 years 0
 § 204.401 or fine or both
 § 204.406
KANSAS Kan. Stat. Ann. 1 -10 years 4 months
 § 65-4127(b)
 § 21-4501
 § 22-3717
*694 KENTUCKY Ky. Rev. Stat. 1 -5 years 0
 § 218A.990 or fine or both
 § 439.34
LOUISIANA La. Rev. Stat. 0-20 years 0
 § 40:967 or fine or both
 § 40:981
MAINE Me. Rev. Stat. Ann. 1 -5 years 1 year
 Tit. 22 and fine
 § 2210-A
 § 2215
 Tit. 34 § 1672
MARYLAND Md. Code. 1957, 0 -5 years 0
 Art. 27, § 286 or fine or both
MASSACHUSETTS Mass. Gen. Laws, 0 -10 years 0
 ch. 94C, § 32 or fine or both
MICHIGAN Mich. Stat. Ann. 0 -14 years 0
 § 18.1070(41) or fine or both
 § 18.1070(46)
MINNESOTA Minn. Stat. 0 -5 years 0
 § 152.15 or fine or both
MISSISSIPPI Miss. Code. Ann. 0 -20 years 0
 § 41-29-139 or fine or both
 § 41-29-145
MISSOURI Mo. Rev. Stat. 2 -10 years 0
 § 195.270 or fine or
 both
MONTANA Mont. Rev. Codes Ann. 1 -life 3 months
 § 54-132
 § 94-9832
NEBRASKA Neb. Rev. Stat. 1 -5 years 0
 § 28-4, 125 or fine
 or both
NEVADA Nev. Rev. Stat. 1 -6 years 1
 § 453.321(b)
 § 213.120
NEW HAMPSHIRE N.H. Rev. Stat. Ann. 0 -10 years 0
 § 318-B:26 or fine or both
*695 NEW JERSEY N.J. Rev. Stat. 0-5 years 0
 § 24:21-19 or fine or both
NEW MEXICO N.M. Stat. Ann. 10-50 years 0
 § 54-11-21 or fine
 § 40A-29-3(B) or both
 § 41-17-24
NEW YORK N.Y. Public Health Law 6 -life 6 years
 § 3396 [5 grams or more]
 N.Y. Penal Law
 § 220.39 1 -10 years 1 year
 § 220.41 [1 gram or more]
 § 220.31 0 -7
 § 70.00 [under 1
 gram]
NO. CAROLINA N.C. Gen. Stat. 0 -10 years 0
 § 90-95 or fine or both
NO. DAKOTA N.D. Cent. Code 0 -20 years 0
 § 19-03.1-23 or fine or both
 § 19-03.1-29
OHIO Ohio Rev. Code Ann. 1 -5 years 0
 § 3719.24 or fine or both
 § 3719.99 (j)
OKLAHOMA Okla. Stat. 4 -20 years 16
 Tit. 63, § 2-401 months
 Tit. 57, § 332.7
OREGON Ore. Rev. Stat. 0 -10 years 0
 § 475.100 or fine
 § 475.990 or both
PENNSYLVANIA Pa. Stat., Tit. 35 0 -10 years 0
 § 780-113a(30) or fine or both
 § 780-113f(2)
 § 780-114
RHODE ISLAND R.I. Gen. Laws Ann. 0 -life 0
 § 21-28-4.01
 § 21-28-4.07
SO. CAROLINA S.C. Code Ann. 0 -10 years 0
 § 32-1510.49 or fine or both
 § 32-1510.56
*696 SO. DAKOTA S.D. Compiled Laws Ann. 0 -10 years 0
 § 39-17-91 or fine or both
 § 39-17-94
TENNESSEE Tenn. Code Ann. 8-20 years 8 years
 § 52-1432(a)(1)
 § 52-1433.
 § 40-3612
TEXAS Tex. Health-Public 2 -10 years 6
 Art. 4476-15 months
 § 4.61(b)(3)
 § 4.03(a)
 § 4.03(b)(3)
 Tex. Code of Criminal
 Procedure
 Art. 42.12
 § 15
UTAH Utah Code Ann. 0 -10 years 0
 § 58-37-8(b)(ii) or fine or both
VERMONT Vt. Stat. Ann., Tit. 18 0 -25 years 0
 § 4224(h) or fine or both
VIRGINIA Va. Code Ann. 10 -50 years 2 1/2
 § 54-524.103 years
 § 53-251
WASHINGTON Wash. Rev. Code 0 -10 0
 § 69.50.401(a)(1) or fine
 § 69.50.406 or both
WEST VIRGINIA W. Va. Code Ann. 1 -10 years 1
 § 60A-4-401(a)(1) or fine or both
 § 60A-4-406
 § 62-12-13
WISCONSIN Wis. Stat. 0 -10 years 0
 § 161.41(1)(b) or fine
 § 161.46 or both
WYOMING Wyo. Statutes Ann. 0 -20 years 0
 § 35-347.31(a) or fine
 § 35.347.36 or both
*697 UNITED STATES U.S. Code 0 -10 years 0
 Tit. 21 or fine
 § 841 or both
 § 845

NOTES
[1] Both the information and the jury instruction defining the offense were couched in the language of Health and Safety Code section 11353 (using a minor to furnish certain controlled substances) rather than section 11380 (using a minor as agent to furnish various other controlled substances). As will be apparent, section 11380 was applicable to the facts of this case while section 11353 was not.

The Attorney General, oddly enough, asks us to correct the judgment to refer to section 11353 rather than section 11380. Appellant, too, appears to assume that section 11353 was the correct section.
We consider this point at the end of our opinion. We will assume for the purpose of discussion that appellant was charged and convicted under the proper section  namely, section 11380.
[2] We view the record, as we must, in the light most favorable to the People, as the party which prevailed below, and resolve all conflicts in testimony against appellant. (See People v. Vann, 12 Cal.3d 220, 225 [115 Cal. Rptr. 352, 524 P.2d 824].)
[3] Dexadrine is an amphetamine isomer.
[4] Deputy Brown was unable to see from her location who it was who handed the amphetamines to Chris. She could only see the person's hand and arm.
[5] The telephone was located at the Pico Rivera sheriff's station. The recording device was attached to the telephone by other deputies, with Deputy Brown's consent.

Appellant suggests in her closing brief that Deputy Brown was not entitled to permit the other deputies to do the recording for her. This suggestion is obviously incorrect. (See Pen. Code, § 633.)
[6] In this connection we note that in Malloy, the majority did not refer to the harmful effects of the use of LSD in deciding that the minimum punishment for a second conviction of the sale of the substance was unconstitutional. In evaluating the nature of the offense before us, however, we find it relevant to comment upon the very harmful effects that the use of amphetamines can have.

Amphetamine addiction is more widespread, more incapacitating, more dangerous and socially disruptive than narcotic addiction. It can devastate the physical self. It can also cause psychosis, with resulting paranoia that is a direct stimulus to crime and violence. Moreover, many amphetamine users turn to barbiturates, as well, to come down from their "highs." (Hearings on Senate Bill No. 674 by the Subcommittee to Investigate Juvenile Delinquency of the Committee On the Judiciary, (92d Cong., 1st Sess.), pp. 87-116: National Institute of Mental Health, Current Concepts on Amphetamine Abuse (Dept. H.E.W. 1972); Grimspoon & Hedbloom, Marijuana and Amphetamine: A Mirror Image (1973) 2 Contemp. Drug Prob. Q. 665.)
Here in California, amphetamine use among young people has long been the subject of widespread concern. (See, e.g., Importation of Dangerous Drugs, Rep. of Sen. Factfinding Com. on Public Health and Safety, 1 Appendix to Sen.J. (1963 Reg. Sess.).) This concern prompted the Legislature in 1965 to enact the Restricted Dangerous Drugs Act.
[7] The consideration of drug addiction would appear less applicable to Malloy because the drug at issue there was LSD. Instances of prolonged, frequent self-administration of hallucinogens like LSD are rare. As a rule, LSD is utilized only for "spree," circumstantial, or recreational use. Consequently, LSD dependence is not a significant social concern. (See Drug Use in America: Problem in Perspective, Second Rep. of the Nat. Com. on Marihuana and Drug Abuse (1973) pp. 131, 146.)

Thus, it is our general impression that LSD addicts are few and far between. This undoubtedly explains why the majority opinion in Malloy failed to address this consideration, despite the emphasis our Supreme Court had placed upon it in Foss.
[8] To be sure, the five-year mandatory minimum term makes the section 11380 offender ineligible for parole consideration longer than one who, for example, commits second degree murder (Pen. Code, §§ 190, 3049; one and two-thirds years), burglary with explosives (Pen. Code, §§ 464, 3049; three and one-third years), arson on a dwelling (Pen. Code, §§ 447a, 3049; eight months), assault with intent to commit murder (Pen. Code, §§ 217, 3049; four months), kidnapping (Pen. Code, §§ 208, 3049; four months); or lewd or lascivious acts upon a child under 14 (Pen. Code, §§ 288, 3049; four months). On the other hand, the section 11380 offender becomes eligible for parole consideration as soon as one who commits robbery with great bodily injury (Pen. Code, §§ 213, 3049; five years), burglary with great bodily injury (Pen. Code, §§ 461, 3049; five years), or rape with great bodily injury (Pen. Code, §§ 264, 3049; five years); and he becomes eligible for parole consideration earlier than one who commits first degree murder (Pen. Code, §§ 190, 3046; seven years.)

Mathematical exactitude in comparative punishment is not required of the Legislature. We review the fitness of the punishment imposed in this case no further than to determine whether it is unconstitutionally disproportionate.
[9] In this connection we note that the Second Division of the Second District of this statewide court in People v. Serna, 44 Cal. App.3d 717, 721 [118 Cal. Rptr. 904], very recently upheld the constitutionality of a three-year mandatory minimum punishment for sale of heroin notwithstanding the reservation in Foss (10 Cal.3d at p. 917, fn. 3) as to the constitutionality of the three-year minimum punishment there mentioned. We further note that the increment in minimum punishment involved in Serna was 16 months, while the one before us, as previously mentioned, is 20 months.
[10] The above-quoted language appears in counts I and II of the information. Count III is identical in all material respects, except that it refers to "dexadrine" instead of "amphetamine sulphate."
[11] The above-quoted instruction is CALJIC No. 12.12 (1973 revision), as adapted by the trial court. As the use notes clearly indicate, CALJIC No. 12.17 (1973 revision) should have been given instead, preceded by CALJIC No. 12.02 (1973 revision).
[a] This column indicates the amount of time one must serve even if the judge or parole board finds mitigating circumstances. For example, if the penalty allows the judge to impose a fine in lieu of a sentence, the minimum term that must be served is zero.