[Crim. No. 10507. First Dist., Div. Two. Jan. 30, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES VIENNE, Defendant and Appellant.

268

## COUNSEL

Linda L. Tedeschi, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KANE, J.**—Defendant appeals from a judgment of conviction of robbery (Pen. Code, § 211); from being adjudged an habitual criminal (Pen. Code, § 644, subd. (a)); and from an order denying his motion to vacate the adjudication of habitual criminality.

In the morning hours of September 22, 1971, defendant, after parking his bicycle, slashed and unlocked a rear screen door of Carlyle Jewelers in San Mateo. Paul Kaplan, the store's owner, heard the slashing and investigated. Defendant, carrying a pistol, was just entering the store and said to Mr. Kaplan, "Don't—I'm hopped up. Do what I say and you won't get hurt." Defendant attempted to avoid identification through the use of a pillow placed on his stomach under his clothing and the use of a mask, wig, rubber gloves and a false moustache.

Defendant made Mr. Kaplan kneel down, took his watch, and shut him in a separate room in the rear of the store. Mr. Kaplan set off a silent burglar alarm. Orville Nelson entered the store and was put into the same room as Mr. Kaplan. After about four minutes, Mr. Kaplan opened the door and saw defendant placing merchandise in a paper bag. The merchandise was worth $13,000. Mr. Kaplan ran out of the store, screaming for help. Defendant ran out of the store, mounted his bicycle, but was captured by Mr. Kaplan.

On appeal, defendant makes a three-pronged attack upon the judgment. First, he seeks to challenge the validity of a prior (1961) felony conviction. Secondly, he urges us to declare the habitual criminal act (Pen. Code, § 644) unconstitutional. Finally, he contends that claimed errors during the trial below require reversal. For reasons which shall appear in our discussion and rejection of each contention, we affirm.

### Prior 1961 Conviction

Defendant contends that his prior 1961 conviction is constitutionally invalid and should not have been utilized to adjudge him an habitual criminal. In addition, appellant argues that the trial court erred in not holding a hearing as to the validity of his prior convictions when they were introduced during trial.

The Attorney General argues that this issue was not properly raised by defendant at trial and is therefore not properly before us. We agree.

(A) *Sufficiency of the Challenge*

*People* v. *Coffey* (1967) 67 Cal.2d 204 [60 Cal.Rptr. 457, 430 P.2d 15], discusses at great length the proper procedure to be followed in order to challenge the use of prior convictions. The Supreme Court concluded that the trial court was the proper place for attacks upon the constitutionality of prior convictions to be decided since such challenges should be disposed of at the earliest opportunity. The court emphasized, however, that the constitutional issues could only be raised by a "clear allegation" that the defendant " *'neither was represented by counsel nor waived the right to be so represented.'* " (P. 215, quoting from *People* v. *Merriam* (1967) 66 Cal.2d 390, 397 [58 Cal.Rptr. 1, 426 P.2d 161].) Although the court in *Coffey* set out the proper procedure for *pretrial consideration* to be followed in contesting the validity of prior convictions (pp. 217-218), the court later stated in *People* v. *Curtis* (1969) 70 Cal.2d 347 [74 Cal.Rptr. 713, 450 P.2d 33], that "so long as the objection is asserted before the case is submitted to the jury," it is insignificant that the issue arises *during* and not before trial (pp. 360-361).

■ Although it is apparent that the learned trial judge was fully cognizant of the rules laid down in *Coffey,* it appears that neither defendant's trial nor appellate counsel fully comprehend them. Furthermore, this court has observed from briefs and oral arguments, not only in this but other cases as well, that a surprising number of members of the bar suffer from the same misunderstanding. It is therefore worthwhile to repeat what our Supreme Court so clearly outlined over five years ago.

The *Coffey* court went out of its way "to delineate the nature of the contemplated hearing, . . . *for the guidance of courts and counsel who will be called upon to deal with similar matters in the future: First,* when a defendant, whether by motion to strike the prior conviction or convictions on constitutional grounds, or by denial of such prior conviction or convictions on constitutional grounds at the time of entering his plea to the same, raises the issue for determination, the court shall, prior to trial, hold a hearing outside the presence of the jury in order to determine the constitutional validity of the charged prior or priors in issue. *Second,* in the course of such hearing the prosecutor shall first have the burden of producing evidence of the prior conviction sufficient to justify a finding that defendant 'has suffered such previous conviction.' (Pen. Code, § 1025.) *Third,* when this prima facie showing has been made, the defendant shall thereupon have the burden of producing evidence that his constitutional right to counsel was infringed in the prior proceeding at issue. *Fourth,* if defendant bears this burden, the prosecution shall have the right to produce evidence in rebuttal. *Fifth,* the court shall make a finding on the basis of the evidence thus produced and

shall strike from the accusatory pleading any prior conviction found to be constitutionally invalid." (Italics partially added.)

The threshold question before us, therefore, is simply whether defendant raised a "clear allegation" that the 1961 conviction was constitutionally infirm. The record rather clearly demonstrates that he did not. Thus, before the prosecutor offered the certified copies of the abstracts of judgment of the two charged priors into evidence, a recess was taken to enable defense counsel to examine them. Upon resumption of the trial defense counsel objected to the admission of the documents "on the basis that there has been no showing that the defendant at all critical stages of the proceedings was represented by counsel at those proceedings, whether preliminary hearing, line-up or during trial." The objection was overruled.

Defendant now argues that this objection to the admissibility of the abstracts of his prior convictions was a sufficient allegation to require a hearing to be held outside the jury on the constitutionality of his 1961 conviction. We disagree.

It is obvious that the objection erroneously sought to misplace "the evidentiary burdens . . . concerning the prior convictions" (*People* v. *Nugent* (1971) 18 Cal.App.3d 911, 915 [96 Cal.Rptr. 209]). It is settled that production of certified copies of an abstract of judgment by the prosecutor makes out a prima facie showing of validity and the defendant thereupon has "the burden of producing evidence that his constitutional right to counsel had been infringed in the prior proceedings" (*People* v. *Nugent, supra,* p. 915).

(B) *The Scope of Inquiry*

In the case at bench defendant urges that if a hearing on the validity of his 1961 conviction had been held, such hearing should encompass and consider not only whether he was represented by, or validly waived, counsel in the 1961 proceedings, but also such matters as the propriety of any pretrial lineup and the competency of his counsel during the 1961 trial.

This contention points up the misunderstanding by some members of the bar as to the limited scope of inquiry to which the trial court is restricted in conducting a hearing based upon a "clear allegation" that an alleged prior conviction is invalid. The court in *Coffey* made it abundantly clear that the only question to be resolved in such a hearing is "whether, in the proceedings leading to that [prior] conviction, defendant was accorded his right to counsel in accordance with the Sixth and Fourteenth Amendments." (*People* v. *Coffey,* at p. 217.)

It should be obvious that any alleged constitutional infirmity in a prior conviction—*other than the right to counsel*—is a matter which must be left to proceedings in habeas corpus. Otherwise, the hearing on the alleged infirmity of the prior could involve more issues and more trial time than the substantive case itself. For example, the prior conviction will often have arisen in another jurisdiction. To explore matters other than the easily determined fact of representation by, or waiver of, counsel could—and no doubt would—require a lengthy recess of the trial in order to procure witnesses and other evidence with the resultant possibility of frequent declaration of mistrials.

In the case at bench we have independently examined the exhibits pertaining to defendant's 1961 conviction. These show on their face that defendant was represented by counsel. Thus, under the clear-cut holding of *People* v. *Coffey* and *People* v. *Nugent,* both *supra,* a prima facie showing of validity was established and the burden thereupon shifted to defendant.

As shown by the record defendant, in fact, made no affirmative allegation whatever that the prior convictions, or either of them, were constitutionally invalid nor did defendant offer any evidence on the point. Since defendant could have properly raised the issue by a pretrial motion to strike (e.g., *People* v. *Coffey, supra* at pp. 217-218; *People* v. *Nugent, supra* at pp. 914-915) or by a motion to strike and supporting declaration or offer of proof during trial (*People* v. *Newton* (1970) 8 Cal.App.3d 359, 386-387 [87 Cal.Rptr. 394]), his failure to do so precludes any attempt to raise the issue on appeal for the first time.

### Constitutionality of the Habitual Criminal Statute
### (Pen. Code, § 644)

Appellant next argues that the habitual criminal statute is unconstitutional for a myriad of reasons, viz.: (1) the habitual criminal allegation should not be tried with the substantive offense since telling the jury of defendant's prior convictions is unduly prejudicial; (2) the statute forced him to a choice between constitutional rights, i.e., waiver of his Fifth Amendment right not to testify in order to secure his right to due process in violation of the rule laid down in *Simmons* v. *United States* (1968) 390 U.S. 377, 389-394 [19 L.Ed.2d 1247, 1256-1259, 88 S.Ct. 967]; (3) the statute violates the double jeopardy provisions of the United States and California Constitutions; (4) the statute imposes cruel and/or unusual punishment in light of the standards enunciated in *People* v. *Anderson* (1972) 6 Cal.3d 628, 634-641 [100 Cal.Rptr. 152, 493 P.2d 880]; (5) the statute violates the trial judge's independent exercise of discretion in light of *People* v. *Tenorio* (1970) 3 Cal.3d 89 [89 Cal.Rptr. 249, 473 P.2d 993]; and,

finally (6) the statute is overbroad and violates due process of law because it sets no age limit on prior convictions used to support the habitual criminal finding.

Penal Code, section 644, has been repeatedly held constitutional in the past and has specifically withstood attacks based on the following constitutional grounds: (1) cruel and unusual punishment (*In re Rosencrantz* (1928) 205 Cal. 534 [271 P. 902], and *In re Boatwright* (1931) 119 Cal. App. 420 [6 P.2d 972]); (2) double jeopardy (*People* v. *Millwood* (1957) 150 Cal.App.2d 154 [309 P.2d 495]); and (3) due process and equal protection (*In re Rosencrantz, supra; People* v. *Douglas* (1960) 187 Cal. App.2d 802 [10 Cal.Rptr. 188]; *People* v. *Dunlop* (1951) 102 Cal.App.2d 314 [227 P.2d 281]).

· Appellant recognizes the long line of cases upholding the validity of the habitual criminal statute, but argues that more recent United States and California Supreme Court decisions have superseded their validity as support for this Penal Code section's constitutionality. After a careful examination of appellant's contentions and citing of new cases, we agree with Justice Tobriner's comment in *People* v. *Ray* (1960) 181 Cal.App.2d 64 [5 Cal. Rptr. 113], "The constitutionality of that law [habitual criminal statute] is so well established it calls for no discussion." (P. 69.) Any change in this recidivist statute, if desired, should be left in the hands of the Legislature. (See *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921].)

### Validity of 1971 Conviction

Appellant finally argues that the 1971 conviction is invalid because (1) the California courts should recognize irresistible impulse as a complete defense as a form of legal insanity and should require an instruction to that effect; (2) defense counsel's failure to raise the *Wells-Gorshen* defense in effect denied defendant effective assistance of counsel; (3) the trial court erred in refusing to give intoxication by drug instructions; (4) the mandatory bifurcated trial procedure, where guilt of the substantive crime is separated from the adjudication of sanity, is improper; and (5) the trial court erred in charging the jury that they could use defendant's prior convictions to impair his credibility since the prior convictions were for crimes similar to the one presently being tried.

■ (1) *Irresistible Impulse:* As noted by defendant, the California Supreme Court, in *People* v. *Wolff* (1964) 61 Cal.2d 795 [40 Cal.Rptr. 271, 394 P.2d 959], went over in great detail the test for sanity which should be utilized in this state. The *Wolff* court held the California version of the

*M'Naughton* standard for insanity to be constitutional under the principles announced by the United States Supreme Court in *Leland* v. *Oregon* (1952) 343 U.S. 790 [96 L.Ed. 1302, 72 S.Ct. 1002]. In addition, the court specifically stated that "The doctrine of 'irresistible impulse' . . . is, of course, not the law of California . . ." (p. 814).

(2) *Wells-Gorshen Defense:* Defendant's contention regarding counsel's alleged failure to raise the *Wells-Gorshen* defense at the guilt-innocence trial is without merit. Defendant makes no showing why such a defense was proper other than a bare assertion by his appellate counsel that the defense should have been utilized. Reliance upon *In re Saunders* (1970) 2 Cal.3d 1033 [88 Cal.Rptr. 633, 472 P.2d 921] as support for his argument is misplaced. In that *habeas corpus* proceeding, the Supreme Court held that the petitioner made a showing of denial of effective counsel by pointing to *specific evidence* (the letter by the petitioner's mother concerning the fracturing of his skull and change thereafter plus the available medical records), largely ignored by the trial attorney, which should have caused the lawyer to investigate further and possibly utilize as a defense at trial. No such specific evidence has been noted by defendant here, and thus, his trial counsel's strategy and judgment for not raising the *Wells-Gorshen* defense cannot be questioned.

■ (3) *Refusal of Intoxication by Drug Instructions:* Defendant argues that there was sufficient evidence to require the court to give his requested instructions regarding intoxication by drugs. We disagree.

It should first be noted that defendant did not testify at the guilt phase. Consequently the only reference to drugs throughout the guilt phase came about during the testimony of the robbery victim relating defendant's own statement when he entered the store and said, "Don't—I'm hopped up." This simple, but patently ambiguous, statement by defendant is not sufficient to raise an inference that he *actually was* intoxicated by drugs during the commission of the robbery. On the contrary, each witness—including the medical doctor who examined and treated defendant for injuries shortly after the robbery—who testified during the guilt phase expressed the opinion that defendant was sober. Thus, there is absolutely no evidence in the record deserving of any consideration whatever that defendant was either intoxicated or that any claimed intoxication had any substantial effect on him or that he could not entertain the specific intent required for the commission of the crime. (*People* v. *Bandhauer* (1967) 66 Cal.2d 524, 528 [58 Cal.Rptr. 332, 426 P.2d 900]; *People* v. *Spencer* (1963) 60 Cal.2d 64, 87 [31 Cal.Rptr. 782, 383 P.2d 134]; *People* v. *Modesto* (1963) 59 Cal.2d 722, 727 [31 Cal.Rptr. 225, 382 P.2d 33]; *People* v. *Small* (1970) 7 Cal.App.3d 347,

356 [86 Cal.Rptr. 478].) Accordingly, the trial court's refusal to give the requested instructions was eminently correct.

 (4) *Mandatory Bifurcated Trial Procedure:* Appellant challenges the bifurcated procedure for determining guilt and sanity as set forth in Penal Code, section 1026, on the following grounds: "Not allowing the defendant . . . to have a unified trial unduly prejudiced him because [1] his medical experts were unwilling or unable to testify at two separate occasions, as demanded by the bifurcated trial procedure, and [2] because the jury might not have applied the evidence of mental state to the criminal intent issue in the bifurcated trial."

The bifurcated proceedings have long been upheld as constitutional (*People* v. *Daugherty* (1953) 40 Cal.2d 876, 893 [256 P.2d 911], and cases cited therein). The only basis for this contention is the declaration of appellate counsel that defendant's trial counsel told her that the medical experts were "willing to testify only once, which they did at the insanity phase."

This assertion in defendant's brief is unsupported by any reference to the record. Additionally, whether the medical witnesses were "willing to testify only once" or not is totally irrelevant since their attendance was compellable by subpoena. This contention, therefore, is groundless.

 (5) *Use of Defendant's Prior Convictions to Impair His Credibility:* In *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], the California Supreme Court held that evidence admissible at trial under Evidence Code, section 788, *may be excluded* as overly prejudicial to a defendant under Evidence Code, section 352. Citing *Gordon* v. *United States* (1967) 383 F.2d 936, 940-941 [127 App.D.C. 343], the court indicated that there is a strong possibility of prejudicial error in allowing the introduction of prior convictions for the same conduct for which the accused is presently on trial (p. 453). Although recognizing the fact that use of prior similar convictions encourages the jury to decide the defendant's guilt on the theory that if he did it once, he probably did it this time, the court noted that "A reviewing court, however, should always give careful consideration to an exercise of a trial court's discretion in both the ruling and the timeliness of its ruling on the admissibility of the prior convictions." (P. 454.)

Nothing in the record would indicate the trial court erred in *charging the jury* it could use the prior convictions to impeach defendant's credibility. The prior convictions had been properly admitted during the guilt stage of the trial. Their use at the insanity phase for impeachment purposes could not have prejudiced defendant in the manner which the *Beagle* court noted.

In addition, as respondent points out, defendant's reliance on *Beagle* is

inappropriate because its holding applies only to trials begun after January 5, 1972 (fn. 2, pp. 454-455). Since defendant's trial began on December 6, 1971, he cannot claim the benefit of the *Beagle* rule.

The judgment and order are each affirmed.

Taylor, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied March 1, 1973, and appellant's petition for a hearing by the Supreme Court was denied March 29, 1973.