[Crim. No. 19154. First Dist., Div. One. July 16, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES MILTON McFARLAND, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Deborah Long, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Richard D. Garske and Patricia D. Benke, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**GRODIN, J.**—James McFarland appeals from his conviction for burglary (Pen. Code, § 459) on the grounds that the trial court erred in denying his motion to preclude use of his prior convictions for purposes of impeachment, in instructing the jury in accordance with CALJIC Nos. 2.03 and 22 (rev.), and in denying his motion to strike a prior conviction as unconstitutional. He contends also that he is entitled to good time/work time (conduct) credit for his time spent in presentence custody. We find no prejudicial error, and therefore affirm his conviction subject to administrative determination of conduct credit pursuant to *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874], as modified.

*Background.* The prosecution's case can be briefly summarized. On October 27, 1977, Mrs. Patricia Froio saw a car pull up beside the house of her neighbor and two men walk toward the neighbor's front door. Suspicious, Mrs. Froio attempted to telephone her neighbor. Receiving no answer, she called the police. While on the phone with the police she saw a third man, later identified as Allen Tobia, exit the car and run toward the neighbor's house. A minute or two later, she saw the car pull into the driveway of the house, and then after a few minutes back out and head up the street. At about that time, Officer Reed of the Fremont Police Department, responding to the radio broadcast of Froio's telephone call, arrived on the scene. He saw the car pull out of the driveway and proceed up a hill. He gave chase and stopped it. The driver turned out to be McFarland. McFarland told another officer, Barton, that he was in the area looking for a "man that lived [there] by the name of James Adrich." Barton noticed an odor of alcohol about McFarland from which Barton concluded that he had been drinking but that he was not intoxicated. Meanwhile another police officer, Officer Dorsey, searched the wooded area near the house and found Tobia hiding in the bushes. Dorsey asked Tobia if "he had any partners," and Tobia responded that he had been with another person who was driving a dark GTO and who had told Tobia to run. When Mrs. Froio's neighbor returned home that evening she found that her front door had been forced and the bedroom ransacked. A television set and other articles were near the front door in apparent readiness for transportation.

McFarland offered no evidence at trial. At closing argument, his counsel suggested that McFarland was too intoxicated to have formed

the specific intent necessary to burglary, i.e., too intoxicated to have realized what his companions were doing.

1. Did the court err in denying McFarland's motion to preclude use of his prior convictions for impeachment?

At trial, McFarland moved to preclude use of three prior convictions to impeach his credibility: a 1971 violation of Penal Code section 487, subdivision 2 (grand theft person), a 1969 violation of section 496 (receiving stolen property), and a 1963 violation of section 459 (burglary). The court denied McFarland's motion with respect to all three convictions, but the prosecutor indicated that he would not use the 1963 conviction if McFarland were to take the stand. ■ We therefore focus upon the two more recent convictions, and review the exercise of the trial court's discretion in light of the four factors set forth in *People v. Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313], as clarified by subsequent judicial illumination, particularly *People v. Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833], and *People v. Fries* (1979) 24 Cal.3d 222 [155 Cal.Rptr. 194, 594 P.2d 19].

■ While theft-related offenses have been declared "less probative" of credibility than offenses such as perjury, they are nonetheless probative. (*People v. Fries, supra*, 24 Cal.3d at p. 229, fn. 7.) In *Beagle*, the court stated that "'[i]n common human experience acts of deceit, fraud, cheating, or stealing...are universally regarded as conduct which reflects adversely on a man's honesty and integrity.'" (6 Cal.3d at p. 453, quoting from *Gordon v. United States* (D.C. Cir. 1967) 383 F.2d 936, 940.) And this appellate district has recently sustained the use of prior convictions of grand larceny and receiving stolen property as "reflective of a person's honesty and integrity, and...therefore probative for purposes of impeachment." (*People v. Anjell* (1979) 100 Cal.App.3d 189, 196 [160 Cal.Rptr. 669].)

■ *Beagle* requires that the probative value of a prior conviction be discounted by the passage of time, and the fact that the priors in question were seven and nine years old is a factor to be weighed in the balance. As stated recently in *People v. Benton* (1979) 100 Cal.App.3d 92 [161 Cal.Rptr. 12], sustaining use of a 13-year-old conviction for burglary, it is only one of the factors to be considered.

McFarland argues that substantial prejudice would have occurred from the use of these priors because of their similarity to the charged offense, and relies heavily upon *People* v. *Banks* (1976) 62 Cal.App.3d 38, 44-45 [132 Cal.Rptr. 751], which contains dicta to the effect that the similarity between the prior crime of receiving stolen property and the charged offense of burglary with intent to commit theft would, in the case of a jury trial, point toward exclusion of the evidence. We note, however, that in *People* v. *Kyllingstad* (1978) 85 Cal.App.3d 562 [149 Cal.Rptr. 637], the court found the trial court's decision *not* to limit impeachment to a receiving stolen property offense "particularly mystifying," in light of the fact that it was "dissimilar to the offense charged," in that case second degree burglary. (*Id.*, at p. 569; cf. *People* v. *Anjell, supra*, 100 Cal.App.3d at p. 197.) Again, the degree of similarity is but one of the factors to be considered.

Finally, the trial court was obliged to consider the adverse effect on the administration of justice should the defendant (as here) elect not to testify for fear of impeachment. (*People* v. *Fries, supra*, 24 Cal.3d at p. 228; *People* v. *Beagle, supra*, 6 Cal.3d at p. 453; *People* v. *Rist, supra*, 16 Cal.3d at pp. 222-223.) In the absence of some offer of proof from the defendant as to matters as to which he would testify should the motion be granted, such an evaluation "must necessarily depend in large part on the totality of other evidence bearing on the question of the defendant's guilt in the unique circumstances of the particular case." (*People* v. *Rist, supra*, at p. 222.)

█ Balancing multiple factors is always a difficult exercise, and necessarily involves some degree of subjectivity. We regard the potential admission of these prior convictions as being very close to the line of impermissibility. We conclude, nevertheless, that the trial court did not abuse its discretion in deciding to admit them.

2. Did the trial court commit prejudicial
   error in its instructions to the jury?

McFarland contends that the trial court gave the jury two improper instructions. █ The first instruction in dispute was CALJIC No. 2.03, which permits the jury to use a false statement made by the de-

fendant before trial as evidence of consciousness of guilt on his part.[1] The apparent reference of the instruction in the context of these facts is to McFarland's statement to Officer Barton that he was in the neighborhood looking for Mr. Adrich. McFarland argues that the giving of that instruction is justified only if there exists evidence that defendant prefabricated a story to explain his conduct (*People* v. *Rubio* (1977) 71 Cal.App.3d 757, 769 [139 Cal.Rptr. 750] [overruled on other grounds in *People* v. *Freeman* (1978) 22 Cal.3d 434, 439 (149 Cal.Rptr. 396, 584 P.2d 533)]), and no such evidence appears. The court in *Rubio*, however, was concerned with the prejudice which may occur from such an instruction where the defendant testifies in a manner consistent with a prior statement. In such a situation, "the instruction of necessity casts specific doubt on a defendant's credibility as a witness and singles out *defendant's testimony* as subject to more particular scrutiny than that attached to prosecution witnesses." (*Ibid.*) Here, the defendant did not testify, and introduced no evidence in support of his statement to Officer Barton. From the other evidence in the case the jury could well believe, and presumably did believe, that McFarland's statement to Officer Barton was a prefabrication. To instruct the jury that it could use the statement of consciousness of guilt on the part of McFarland probably adds little to the analysis, since the same evidence which would lead the jury to conclude that the statement was a prefabrication would lead the jury to conclude that McFarland was guilty of the crime charged. In that light the instruction was redundant, but not prejudicial.

The other instruction to which McFarland objects was based on CALJIC No. 22 (rev.), which the California Supreme Court in *People* v. *Brigham* (1979) 25 Cal.3d 283 [157 Cal.Rptr. 905, 599 P.2d 100], disapproved. Conceding this was error, respondent contends that the error was harmless and we agree. A close review of the record reveals that it is not "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *People* v. *Brigham, supra*, at p. 292.)

---

[1]CALJIC No. 2.03 reads: "If you find that before this trial the defendant made false or deliberately misleading statements concerning the charge upon which he is now being tried, you may consider such statements as a circumstance tending to prove a consciousness of guilt but it is not sufficient of itself to prove guilt. The weight to be given to such a circumstance and its significance, if any, are matters for your determination."

3. Did the trial court err in denying McFarland's motion to strike his 1971 grand theft conviction as unconstitutional?

The People alleged grand theft from the person (Pen. Code, § 487, subd. 2) as a prior conviction, incurred in 1971 in Los Angeles. To prove the prior the prosecutor tendered copies of minutes of the Los Angeles County Superior Court. From the face of the minutes it appeared that by stipulation joined in by McFarland the matter had been submitted for court trial, and that McFarland had been found guilty upon the transcript of proceedings at the preliminary hearing. The minutes were taken on a printed form which provided printed statements and check blocks for various eventualities in proceedings of various kinds. The portion of the form which relates to trial submission upon the preliminary hearing transcript does not include a check-off statement to reflect an express waiver of jury trial; there is such a check-off statement in another portion of the form, but the block was not checked. There is, in short, no indication on the form that McFarland was advised of, or expressly and personally waived, his right to jury trial, beyond what might be inferred from the checked statement that he had stipulated to submit the matter on the transcript.

■ In the trial court in this action McFarland moved to strike the 1971 prior on the ground that the minutes submitted by the prosecutor did not affirmatively show advice as to and waiver of his constitutional right to a jury trial, and that waiver of a constitutional right cannot be presumed from a silent record. McFarland's motion was denied.

In this court McFarland argues that the trial court's ruling was erroneous in light of *Boykin v. Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], and *In re Mosley* (1970) 1 Cal.3d 913 [83 Cal.Rptr. 809, 464 P.2d 473].

The People seek to short-circuit this argument procedurally, contending that use of a motion to strike as the vehicle for an assertion that a prior is constitutionally invalid, under the procedure outlined in *People v. Coffey* (1967) 67 Cal.2d 204 [60 Cal.Rptr. 457, 430 P.2d 15], is limited to instances in which the constitutional ground is denial of assistance of counsel. McFarland, on the other hand, contends that the

*Coffey* procedure is appropriate to any constitutional ground. The issue has not been clearly resolved,[2] but this court need not resolve it in this proceeding. Assuming that the *Coffey* procedure was applicable to the kind of challenge McFarland wished to make, it is clear that he failed to bear the evidentiary burden which *Coffey* and subsequent cases impose.

*Coffey* emphasized that "the issue must be raised by means of allegations which, if true, would render the prior conviction devoid of constitutional support." (67 Cal.2d at p. 215.) In the context of that case, this meant a "'clear allegation to the effect that, in the proceedings leading to the prior conviction under attack, he *neither was represented by counsel nor waived the right to be so represented.*'" (Original italics, *id.*, at p. 215, quoting from *People* v. *Merriam* (1967) 66 Cal.2d 390, 397 [58 Cal.Rptr. 1, 426 P.2d 161] [overruled on other grounds in *People* v. *Rincon-Pineda* (1975) 14 Cal.3d 864, 882 [123 Cal.Rptr. 119, 538 P.2d 247, 92 A.L.R.3d 845)].) Such an allegation triggers a hearing at which the prosecutor "shall first have the burden of producing evidence of the prior conviction sufficient to justify a finding that defendant 'has suffered such previous conviction'...[and] when this prima facie showing has been made, *the defendant shall*

---

[2]Several cases contain statements to the effect that denial of the right to counsel is the only constitutional infirmity in a prior conviction which may be attacked on a motion to strike. (*People* v. *Lewis* (1977) 74 Cal.App.3d 633 [141 Cal.Rptr. 614]; *People* v. *Superior Court* (*Gaulden*) (1977) 66 Cal.App.3d 773 [136 Cal.Rptr. 229]; *People* v. *Malloy* (1974) 41 Cal.App.3d 944 [116 Cal.Rptr. 592]; *People* v. *Vienne* (1973) 30 Cal.App.3d 266 [105 Cal.Rptr. 584].) Only two of the decisions contain explanations for that proposition, however. In *Vienne* the court rejected attempts to challenge the *competency* of counsel in the prior proceeding, with the following observation: "It should be obvious that any alleged constitutional infirmity in a prior conviction—*other than the right to counsel*—is a matter which must be left to proceedings in habeas corpus. Otherwise, the hearing on the alleged infirmity of the prior could involve more issues and more trial time than the substantive case itself. For example, the prior conviction will often have arisen in another jurisdiction. To explore matters other than the easily determined fact of representation by, or waiver of, counsel could—and no doubt would—require a lengthy recess of the trial in order to procure witnesses and other evidence with the resultant possibility of frequent declaration of mistrials." (30 Cal.App.3d at p. 272, italics in original.) In *Gaulden* the same court, for the same reason, again rejected the propriety of such an attack. (66 Cal.App.3d at p. 776.) In *Gonzalez* v. *Municipal Court* (1973) 32 Cal.App.3d 706 [108 Cal.Rptr. 612], however, the same court approved the use of a *Coffey* motion to raise asserted *Boykin-Tahl* errors. (*Id.*, at pp. 709-710; see also *Hartman* v. *Municipal Court* (1973) 35 Cal.App.3d 891, 893 [111 Cal.Rptr. 126].) *People* v. *Lewis, supra*, appears to be the only case which holds that *Boykin-Tahl* rights may not be asserted by such a motion, and the opinion in that case relies upon the explanation in *Vienne, supra*. (74 Cal.App.3d at p. 740.) Arguably, the explanation in *Vienne* does not apply where the validity of the prior conviction can be determined from simple examination of the record.

*thereupon have the burden of producing evidence that his constitutional right. . .was infringed in the prior proceeding at issue.*" (67 Cal.2d at p. 217, italics added.) Only when the defendant has met this preliminary burden is the prosecution required to produce evidence in rebuttal. (*Ibid.*) Following *Coffey*, courts have rejected pretrial motions to strike a conviction on constitutional grounds where the defendant fails to come forward with the necessary allegations and evidence. (E.g., *People v. Bowen* (1971) 22 Cal.App.3d 267, 286 [99 Cal.Rptr. 498]; *People v. Vienne, supra*, 30 Cal.App.3d 266, 270-271; cf. *Salazar v. Municipal Court* (1975) 44 Cal.App.3d 1024 [119 Cal.Rptr. 98].)

McFarland suggests that the procedural requirements of *Coffey* have been impliedly modified by *Tahl*, which interpreted the United States Supreme Court's decision in *Boykin* to mean that where a guilty plea is taken "the record must contain *on its face* direct evidence that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his plea." (*In re Tahl, supra*, 1 Cal.3d at p. 132.) These same safeguards are applicable where, instead of pleading guilty, the defendant submits his case on a transcript of the preliminary hearing which under the circumstances can offer him no hope of acquittal. (*In re Mosley, supra*, 1 Cal.3d at p. 927.)

*Tahl* and *Mosely*, however, involve the criteria for determining the validity of a conviction under attack in a habeas corpus proceeding, and there is nothing in either opinion which evidences a change in the procedure which *Coffey* prescribes for invoking the application of those criteria in the context of a motion to strike a prior conviction from consideration in a subsequent criminal proceeding.[3] In any event, *Mosley* made *Boykin-Tahl* principles applicable to submissions on preliminary

---

[3]A defendant may of course demonstrate the invalidity of a conviction through direct appeal, and in a collateral attack by habeas corpus he may be required to make some showing of reasons why he has not attempted to do so. (Cf. *In re Ronald E.* (1977) 19 Cal.3d 315, 322-323, fn. 3, p. 325, fn. 8 [137 Cal.Rptr. 781, 562 P.2d 684]; *People v. Lewis, supra*, 74 Cal.App.3d 633, 640.) Where a defendant has not availed himself of either the right of appeal or habeas corpus, and after a lapse of over six years asserts the invalidity of a prior conviction through a *Coffey* motion, it would not appear unduly burdensome or prejudicial to insist that he come forward with specific allegations and evidence in support of his assertion before the prosecutor assumes the burden of demonstrating the validity of the prior in accordance with *Boykin-Tahl* criteria. (But cf. *Salazar v. Municipal Court, supra*, 44 Cal.App.3d at p. 1028, intimating that the evidentiary burden imposed upon the defendant in *Coffey* may not apply to posttrial convictions.)

hearing transcripts only where the submission is *"in fact* tantamount to a plea of guilty...." (1 Cal.3d at p. 926, fn. 10.) The court in *Mosely* expressly noted that: "We can conceive of many cases wherein submission on the transcript of the preliminary examination would in no way have the practical effect of a guilty plea. Purely by way of example and without intending any limitation, we include among these the following: (1) a case where the preliminary examination involved substantial cross-examination of prosecution witnesses and the presentation of defense evidence, and (2) a case wherein the facts revealed at the preliminary examination are essentially undisputed but counsel seeks to make an argument to the court as to the legal significance to be accorded them." (1 Cal.3d at pp. 924-925, fn. 9.) It is true that the Supreme Court subsequently declared in *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 605 [119 Cal.Rptr. 302, 531 P.2d 1086], that trial courts must make a full record of advice and waivers in connection with *all* submissions on the preliminary hearing transcript, but *Bunnell* was expressly made prospective only and does not apply to McFarland's 1971 prior. To bear his *Coffey* burden, and thus shift to the People the burden of producing additional trial records to show a knowledgeable waiver of McFarland's right to jury trial in the 1971 proceedings, McFarland was required to produce evidence from which it could have been found that the submission in 1971 was *"in fact* tantamount to a plea of guilty" within the meaning of *Mosley*. (1 Cal.3d at p. 926, fn. 10.) He did not do so.

McFarland's argument in the trial court was somewhat different. Tacitly acknowledging (as *Bunnell* later made clear) that submission on a transcript is in fact a contested trial albeit on a limited evidentiary record, McFarland simply contended that the record did not reflect the knowledgeable and personal waiver of jury trial which had been required by California cases long before *Boykin* or *Tahl*. (*People* v. *Holmes* (1960) 54 Cal.2d 442 [5 Cal.Rptr. 871, 353 P.2d 583].) But having failed to bring the submission within the *Boykin-Tahl* affirmative-record rules, McFarland (to meet his *Coffey* burden) would have been required to produce evidence (most readily in the form of his own testimony) that in fact he had not knowledgeably and personally waived jury trial. The mere silence of the record would not (outside the ambit of *Boykin-Tahl*) meet McFarland's burden for him.

The judgment of conviction is affirmed. McFarland's request for modification of his sentence to reflect good time/work time credit for

his time spent in presentence custody will be referred to the Department of Corrections pursuant to *People* v. *Sage, supra*, 26 Cal.3d 498, as modified.

Racanelli, P. J., and Elkington, J., concurred.

The petitions of both parties for a hearing by the Supreme Court were denied September 11, 1980. Mosk, J., was of the opinion that the petitions should be granted.