[No. A022735. First Dist., Div. Four. Aug. 29, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
LAWRENCE L. DOSSMAN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Certified for publication except as to parts 1, 3 and 4 (Cal. Rules of Court, rules 976(b) and 976.1).

## COUNSEL

Charles A. Bonner, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Ann K. Jensen and Gloria F. DeHart, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ANDERSON, P. J.**—A jury found appellant Lawrence L. Dossman guilty of one count of assault (Pen. Code,[1] § 240, a lesser included offense included within § 220, assault with intent to commit rape), one count of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)) and one count of false imprisonment (§§ 236, 237). The trial court sentenced him to state prison for three years with credit for time served.

Appellant appeals from the judgment of conviction contending that (1) the evidence was insufficient to support the jury's finding of aggravated assault; (2) the trial court committed prejudicial error by denying his motion to preclude impeachment with his prior felony convictions in the event he testified (*People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]); (3) the trial court committed prejudicial error in denying his *Buford* motion (*People* v. *Buford* (1982) 132 Cal.App.3d 288 [132 Cal.Rptr. 288, 182 Cal.Rptr. 904]); and (4) the trial court committed prejudicial error by failing to instruct *sua sponte* on his theory of self defense. We affirm the judgment.

### STATEMENT OF FACTS

At approximately 11 a.m. on October 14, 1982, Patsey B. entered the women's restroom at the Continuation High School located in Martinez. She entered a middle stall and shut the door to use the bathroom. While she

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

was in the stall, she heard someone enter the restroom and close the door. Concerned because the restroom door is always kept open, she stood up, dressed and opened the stall door. She was confronted by appellant, who stood facing her with his pants down to his knees; she observed that appellant was not wearing underwear. Patsey began to scream and appellant told her to "shut up and be quiet." She testified that appellant approached her and put his hands on her shoulders, acting "like he was going to kiss me or something and kind of rubbed up on me." She started "swinging" at appellant and kneed him in the groin. Appellant then slapped her in the face, grabbed her by the shirt, lifted her over the toilet and slammed her head against the stall wall. When she came down she pushed appellant out of the way and ran to the restroom door, but he was already there with his pants pulled up. Patsey then started hitting appellant with her fists in an effort to get out of the bathroom. During the ensuing struggle, her T-shirt was pulled off and appellant grabbed her hair, leaving a bald spot on the back of her head. Eventually, appellant told Patsey that he would let her go if she promised not to tell anyone. He started to let her out of the restroom stating, " 'I swear, if you tell anyone, I'll kill you.' " Instead of letting her go, however, he then placed his hands around her neck and tried to choke her, leaving scratches on her neck. Patsey testified that she then "started begging and pleading with him and everything, and finally he opened the door a little bit and I pushed it the rest of the way open and I ran out."

## THE APPEAL

### 1. *Sufficiency of the Evidence—Aggravated Assault*\*

. . . . . . . . . . . . . . . . . . . . . . .

### 2. *Admissibility of the Prior Convictions*

At trial appellant made an unsuccessful *Beagle* motion (*People* v. *Beagle, supra,* 6 Cal.3d 441) to exclude use of two prior felony convictions, i.e., 1982 violations of Health and Safety Code section 11350, subdivision (a) (possession of a controlled substance), and Health and Safety Code section 11351, subdivision (a) (possession of a controlled substance for sale). The trial court denied the motion stating that under Proposition 8 (Cal. Const.,

---

*Part 1 of this opinion is not certified for publication. (See fn., *ante,* at p. 843.)

art. I, § 28)[2] it was compelled to allow use of the priors for impeachment should appellant elect to testify. As a result, appellant refused to testify.

■ Appellant contends that the enactment of Proposition 8 did not eliminate the trial court's discretion under Evidence Code section 352 to exclude evidence of prior convictions when "the probative value of such evidence is substantially outweighed by the risk of undue prejudice." He asserts that under the rule of *Beagle* and its progeny, the possession and possession for sale of a controlled substance convictions had no bearing on his credibility and therefore should have been excluded as a matter of law.

The People argue on appeal that *any* prior felony conviction is relevant to the issue of witness credibility. This identical argument was rejected in the recent case *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111]. ■ There, our Supreme Court concluded (1) that article I, section 28, subdivision (f), of the California Constitution did not eliminate the trial court's discretion with respect to felony-impeachment under Evidence Code section 352 (*id.,* at pp. 306-312); and (2) the language of subdivision (f) is limited by the due process clause of the Fourteenth Amendment to permit only relevant convictions, i.e., those necessarily involving moral turpitude which have a tendency to disprove the witnesses' credibility. (*Id.,* at pp. 313-315.)

The *Castro* court set forth guidelines for a trial court to follow in determining whether a prior felony is admissible for impeachment purposes. The court stated that "it will be necessary to determine with respect to each felony conviction offered for impeachment—difficult though this may prove to be—whether it does or does not involve moral turpitude. If it does not, that is the end of it. If it does, it is prima facie admissible, subject to the exercise of trial court discretion." (*People* v. *Castro, supra,* 38 Cal.3d at p. 316, fn. omitted.)

■ Applying the above rules to the instant case, we must first consider whether the possession and possession for sale priors involved moral turpitude. Both crimes were involved in *Castro*. There, our Supreme Court stated, "we hold that while simple possession of heroin does not necessarily

---

[2]Section 28, subdivision (f), of the California Constitution provides in full: "*Use of Prior Convictions.* Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding. When a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court."

We note that the trial court was correct in using Proposition 8 as the measure of admissibility of appellant's prior convictions since the instant offenses arose after the effective date (June 9, 1982) of article I, section 28, subdivision (f), of the California Constitution. (*People* v. *Smith* (1983) 34 Cal.3d 251, 262 [193 Cal.Rptr. 692, 667 P.2d 149].)

involve moral turpitude [citations], possession for sale does—though the trait involved is not dishonesty but, rather, the intent to corrupt others. Defendant should, therefore, not have been impeached with the conviction for simple possession at all, and the trial court erred in stating it had no discretion with respect to either conviction." (*People* v. *Castro, supra,* 38 Cal.3d at p. 317, fn. omitted.) Based on *Castro,* we are compelled to conclude that the trial court erred in regard to the admission of the simple possession prior. Furthermore, even though appellant's prior conviction of possession for sale met the requirement of moral turpitude, it is clear, under *Castro,* that the trial court's statement that it had no discretion with respect to admissibility of either conviction also constituted error. ■ Nevertheless, we conclude that the error in this case was not prejudicial requiring a reversal of the conviction.

■ California Constitution, article VI, section 13, provides that *"No judgment shall be set aside,* or new trial granted, in any cause, *on the ground* of misdirection of the jury, or of *the improper admission* or rejection *of evidence,* or for any error as to any matter of pleading, or for any error as to any matter of procedure, *unless,* after an examination of the entire cause, including the evidence, the court shall be of the opinion that *the error* complained of *has resulted in a miscarriage of justice."* (Italics added.) As the case law explains, miscarriage of justice should only be declared where, after a review of the entire record, the court concludes that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Consistent therewith, the *Castro* court applied the *Watson* standard in determining the prejudicial effect stemming from the trial court's erroneous admission of the prior convictions. (*People* v. *Castro, supra,* 38 Cal.3d at p. 319.) ■ The very same standard of review applies where, as here, the defendant refuses to take the stand because of the *Beagle* error. (See *People* v. *Barrick* (1982) 33 Cal.3d 115, 129-130 [187 Cal.Rptr. 716, 654 P.2d 1243]; *People* v. *Spearman* (1979) 25 Cal.3d 107, 119 [157 Cal.Rptr. 883, 599 P.2d 74]; *People* v. *Fries* (1979) 24 Cal.3d 222, 233-234 [155 Cal.Rptr. 194, 594 P.2d 19]; and *People* v. *Rist* (1976) 16 Cal.3d 211, 222-223 [127 Cal.Rptr. 457, 545 P.2d 833].)[3]

---

[3]We are aware of those cases which prescribe the standard of reversible error per se in those situations where the defendant has refused to testify as a result of an adverse *Beagle* ruling. (See, e.g., *People* v. *Almarez* (1985) 168 Cal.App.3d 262 [214 Cal.Rptr. 105].) We decline to follow that view because we believe that it presents too broad of an interpretation of *Beagle* and its progeny. (See *People* v. *Fisher* (1984) 153 Cal.App.3d 826, 834-837 [200 Cal.Rptr. 683].)

Appellant herein concedes that the *Watson* standard is the applicable standard of review.

In determining if *Beagle* error is prejudicial in those circumstances where the defendant has refused to testify, the critical inquiry on appeal is whether the court can glean from the record a "basis for concluding that appellant's testimony would not have affected the result of the trial." (*People* v. *Spearman, supra,* 25 Cal.3d at p. 119; see *People* v. *Barrick, supra,* 33 Cal.3d at p. 130; *People* v. *Fries, supra,* 24 Cal.3d at pp. 233-234; *People* v. *Rist, supra,* 16 Cal.3d at p. 223.) Although it is true that the Supreme Court reversed the convictions in each of the above cited cases, "[n]ot every case falls within these holdings. There are those exceptional cases even where the defendant does not testify where *Beagle* error will be harmless." (*People* v. *Logan* (1982) 131 Cal.App.3d 575, 578 [182 Cal.Rptr. 543] [defendant confessed to crime]; see also *People* v. *Fisher, supra,* 153 Cal.App.3d 826 [alibi defense presented]; *People* v. *McFarland* (1980) 108 Cal.App.3d 211 [166 Cal.Rptr. 429] [defendant offered no evidence at trial; diminished capacity argued during closing argument]; *People* v. *Anjell* (1979) 100 Cal.App.3d 189 [160 Cal.Rptr. 669] [alibi defense presented (1st Dist., 4th Div., per Rattigan, J., Caldecott, P. J., and Poché, J., concurred)].) If the defense was adequately presented there is no prejudice. (*People* v. *Anjell, supra,* 100 Cal.App.3d at pp. 198-199.) Stated another way, if defendant's testimony would have been only corroborative or cumulative to other testimony already given, then there is no prejudice resulting from defendant's failure to testify. (*Ibid.*)

■ An exceptional case is presented here. At trial Sergeant Sam Decker of the Martinez Police Department testified that after appellant's arrest and following *Miranda* admonitions (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]), appellant voluntarily related, during two taped interviews, his version of the events which occurred on October 14, 1982. Sergeant Decker, who prepared a police report incorporating the transcript of the tapes, testified on direct and cross-examination to appellant's statements. In the first interview appellant denied entering the women's restroom at the high school. In the second interview, which occurred moments after the first and which was prompted at appellant's request, appellant admitted that he entered the women's restroom twice. He told the officer that he knew he had entered the women's restroom and that he had gone there hoping to see some girls inside the bathroom. On his first visit no one was present so he left. On his second visit into the restroom, he heard a toilet flush and observed a female exit one of the bathroom stalls. Appellant related to the officer that the woman began hollering and swinging at him. He told the woman to watch her mouth and grabbed her arms in an effort to calm her down. Appellant related that he was successful in calming her down and that he thereafter returned to class. He denied assaulting Patsey.

Based on the foregoing testimony of Sergeant Decker, we do not have to speculate as to what appellant's in-court testimony would have been. We may reasonably assume that had appellant testified, such testimony would have been corroborative and cumulative of the officer's testimony, i.e., that appellant had denied the allegations against him. (Cf. *People* v. *Logan, supra,* 131 Cal.App.3d 575, 578; *People* v. *Anjell, supra,* 100 Cal.App.3d 189, 197-198.) Under these particular facts there is clearly a basis for concluding that appellant's testimony would not have affected the trial. (Cf. *People* v. *Fisher, supra,* 153 Cal.App.3d 826, 836-837.) As a result, we find that appellant was not prejudiced by his failure to testify.[4]

In addition, the People's case was strong. As set forth in detail, *supra,* Patsey B., the victim of the crimes, positively identified appellant as her assailant at trial. She described the attack and the injuries she suffered as a result of that attack. Testimony of other prosecution witnesses corroborated Patsey's testimony as to the extent of her injuries. Specifically, Barbara Littlefield, one of Patsey's teachers at Continuation High School, testified that when Patsey returned to class from her trip to the bathroom, she was white and shaking and had marks on her face, and her arm was scratched. Dave Cutaia, an officer with the Martinez Police Department who also investigated the incident, testified that there was swelling and redness on the left side of Patsey's face, and that some of her hair was loose and hanging on the back of her head and the rear of her shirt. Karen Sheldon, a criminologist with the Contra Costa County Sheriff's Department, testified that she examined the hair collected from Patsey's clothing and stated that they exhibited typical signs of forcible removal.

In sum, although appellant did not testify allegedly because of the erroneous *Beagle* ruling, nevertheless, the record shows clearly that his version of the facts was presented to the jury by way of Sergeant Decker's testimony. Under these circumstances and after a review of the entire record, we conclude that it is not reasonably probable that a result more favorable to appellant would have been reached in the absence of the error. (Cal. Const., art. VI, § 13; *People* v. *Watson, supra,* 46 Cal.2d 818, 836.)

---

[4]Appellant apparently concedes that his testimony would have been corroborative and cumulative to the officer's testimony. In his brief filed on appeal appellant states: "The testimony of prosecution witness Decker clearly supports Appellant's contention. As investigating officer, Sergeant Decker interrogated the Appellant and testified at trial as to the fruit of that interrogation. Once advised of his rights, Appellant freely submitted to questioning by Sergeant Decker. . . . After admitting his presence in the women's restroom at Martinez Continuation High School, Appellant denied intending to or attempting to rape. (Count One.) He stated that he touched complainant [*sic*] only to calm her. . . . Appellant denied 'hitting' or '[s]triking' Complainant [*sic*]. . . . On cross-examination, Sergeant Decker testified from his investigation report that Appellant admitterd grabbing the Complainant [*sic*] arm after she began beating him with her fists. . . . According to Sergeant Decker, his report indicated that Appellant denied trying to kiss the Complainant [*sic*]. . . ."

### 3. *Challenge to Jury Panel*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

Accordingly, the judgment of conviction is affirmed.

Sabraw, J., concurred.

**POCHÉ, J.**—I respectfully dissent from that portion of the majority opinion finding harmless the trial court's errors under *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111]. I agree with the majority, however, that two errors were committed: (1) determining that defendant's prior conviction of possession of a controlled substance was admissible for impeachment purposes; and (2) failing to exercise its discretion under Evidence Code section 352 with respect to the only prior conviction which was admissible for that purpose: possession of a controlled substance for sale. I view the effect of those errors quite differently from that of my colleagues.

I cannot agree with their presumption of what defendant's testimony would have been "i.e., that appellant [would have] denied the allegations against him." (Maj. opn. *ante*, p. 850.) How do they know that? Because the arresting officer testified to his conversations with defendant. Thus the law now is, once you talk to the police, you are limited to testifying in court to what you told them. And you need not bother testifying for if you do, it will be merely "corroborative and cumulative" of the arresting officer's recitation of what you said.

My point is merely this: appellate courts are treading on thin ice when they attempt to second-guess from a silent record what a defendant's testimony might have been. Treading does not come any easier by looking to his postarrest statements to the police.

The next step of the majority's analysis is to guess the effect that nonexistent testimony would have had on the triers of fact. (Maj. opn., *ante*, p. 850.) I submit that in so doing, my colleagues have fallen through the ice into the pond. Whether or not the jury would have believed in whole or in part or totally disbelieved the defendant depends on a multitude of factors beyond the knowledge of this court. For instance, would defendant have been a believable witness? Would the prosecuting victim have become less believable in the face of another version of events? I submit that neither of these questions can be answered by the reading of a cold record. What can be said with some certainty on this record is that the jury did not believe

---

\*Part 3 of this opinion is not certified for publication. (See fn., *ante*, at p. 843.)

everything the prosecuting victim said, for they found defendant not guilty of assault with intent to commit rape, but guilty of the lesser included offense of simple assault.

In short, I cannot join my colleagues' analysis of harmless error in the instant case. The question thus becomes what methodology of assessing the effect of the errors is the correct one?

Were the only error before this court the error in failing to exercise discretion with respect to the good impeaching prior conviction, I would vote for a remand for limited hearing in accordance with *People* v. *Reardon* (1985) 169 Cal.App.3d 110, 121 [215 Cal.Rptr. 88], and *People* v. *Brazil* (1985) 169 Cal.App.3d 889, 895-896 [215 Cal.Rptr. 499].)[1] That procedure will not work here, however, because one prior conviction was absolutely inadmissible for impeachment purposes. I have no way of knowing whether defendant's decision to testify would be altered by the fact that he could be impeached with only one rather than two prior convictions. It might well have. Reluctantly, therefore, I conclude that the errors before this court require a reversal of the judgment of conviction.

[1]Petitions for review are presently pending in the California Supreme Court in both cases.